

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilson Rivera Sierra<br><br>     Peticionario<br><br>          v.<br><br>Superintendente Institución<br>Anexo 500 de Guayama, et. al. | Certiorari<br><br>2010 TSPR 84<br><br>179 DPR ____ |

Número del Caso: CC-2009-124

Fecha: 24 de mayo de 2010

Tribunal de Apelaciones:

     Región Judicial de Guayama Panel X

Juez Ponente:

     Hon. Carmen A. Pesante Martínez

Abogados  de la parte peticionaria:

          Lcdo. Juan Carlos Ríos Pérez
          Lcdo. Luis A. Henríquez Carrero

Oficina de la Procuradora General:

          Lcda. Amir Cristina Nieves Villegas
          Procuradora General Auxiliar

Materia: Hebeas Corpus

Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correcciones del pr   oceso de compilación y publicación oficial de las decisiones   del Tribunal. Su distribución electrónica se hace como un servici   o público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilson Rivera Sierra
      Peticionario

                                              *Certiorari*

        v.
                                      CC-2009-124

Superintendente     Institución
Anexo 500 de Guayama, *et. al.*
          Recurridos


*SENTENCIA*

En San Juan, Puerto Rico, a 24 de mayo de 2010.

El señor Wilson Rivera Sierra se encuentra confinado en custodia de la Administración de Corrección (A.C.). Desde el 11 de agosto de 2004, el señor Rivera Sierra participa del Programa de Supervisión Electrónica. Sin embargo, fue reingresado a la Institución Anexo 308 de Bayamón el 5 de diciembre de 2007, por presuntamente incurrir en violación de las condiciones del contrato de participación.

El 10 de diciembre de 2007, se celebró ante el funcionario Pedro Burgos Carrasquillo una Vista de Notificación de Cargos, en la cual se resolvió

que existía causa probable para entender que el señor Rivera Sierra violó las condiciones número 1, 2, 3, 4, 8 y 16 del Convenio de Supervisión Electrónica del 29 de noviembre de 2006. Ese mismo día, se le notificó al señor Rivera Sierra el Informe de Querella de Incidente Disciplinario, el cual contenía una querella suscrita del 4 de diciembre de 2007 que le imputaba hechos alegadamente acaecidos el 3 de diciembre de 2007.

Posteriormente, el 20 de diciembre de 2007, se citó al señor Rivera Sierra para la Vista Final de Revocación de Supervisión Electrónica, la cual se celebró el día siguiente ante la oficial examinadora de la A.C., la señora Addyth Valle Torres. Al inicio de la vista, la defensa solicitó oralmente la desestimación de la querella porque en la vista inicial se había violado el derecho del señor Rivera Sierra al debido proceso de ley. Ante este planteamiento, la oficial examinadora paralizó la vista y ordenó que los señalamientos fueran presentados por escrito. La defensa cumplió con dicha orden al cabo de cinco días.

El 5 de febrero de 2008, el abogado del señor Rivera Sierra se encontraba en la Institución Anexo 308 de Bayamón, atendiendo unas vistas disciplinarias de otros confinados, cuando se le informó personalmente que el caso del señor Rivera Sierra había sido señalado para ese mismo día. Alega el peticionario que ese día su representante legal se reunió con la oficial examinadora para informarle que la vista no estaba señalada y que aún no se había resuelto la moción de

desestimación. En esta conversación informal la oficial examinadora se limitó a mencionar que surgía del expediente una prueba confidencial que a su juicio hacía imposible la excarcelación del confinado. La representación legal del señor Rivera Sierra adujo que tanto en aquel momento, como posteriormente en las vistas, no se le hizo constar que existía esa supuesta prueba confidencial. A esos efectos, solicitó enmendar la solicitud de desestimación para incluir el planteamiento de que la falta de acceso a esta prueba violentaba el debido proceso de ley del señor Rivera Sierra. Esta alegada conversación no fue grabada, al igual que la vista del 21 de diciembre de 2007.

El 20 de junio de 2008, el señor Rivera Sierra presentó un recurso de Hábeas Corpus ante el Tribunal de Primera Instancia. En la vista el señor Rivera Sierra alegó que se encontraba encarcelado desde el 5 de diciembre de 2007, pendiente a que la oficial examinadora atendiera la moción de desestimación. Luego de escuchar al señor Juan Ortiz Escudé, Supervisor de Récord del Anexo 500 de Guayama, quien reconoció que el expediente no incluía una resolución resolviendo la moción de desestimación ni atendiendo la revocación del privilegio, el foro de instancia declaró ha lugar la petición de Hábeas Corpus y ordenó la excarcelación del señor Rivera Sierra. A pesar de esto, el señor Rivera Sierra permaneció encarcelado.

El 23 de febrero, la representación legal del confinado presentó ante el tribunal de instancia una Moción Urgente de

Desacato. Ese mismo día, la A.C. presentó una Moción de Reconsideración, en la cual alegó que se había celebrado la vista final de revocación el 5 de febrero de 2008.[1] El señor Rivera Sierra presentó, por su parte, un escrito de Oposición Urgente a la Moción de Reconsideración. Acto seguido, el tribunal de instancia emitió una Resolución concluyendo que la revocación de la libertad bajo el Programa de Supervisión Electrónica, y el posterior encarcelamiento, eran legales. Además, se declaró sin jurisdicción y concluyó que el confinado debió haber canalizado su reclamo mediante un recurso de *Mandamus* y no a través de un recurso de *Hábeas Corpus*.

Inconforme con dicha determinación, el señor Rivera Sierra presentó una moción de reconsideración, que fue rechazada de plano. Por ende, procedió el señor Rivera Sierra a interponer un recurso de apelación ante el Tribunal de Apelaciones. Posteriormente, el foro apelativo confirmó la resolución apelada. A causa de esto, el 23 de febrero de 2009, el señor Rivera Sierra presentó un recurso de *certiorari* ante este Tribunal. Alegó que el Tribunal de Apelaciones había errado al no revocar al foro de instancia porque se le había violado el debido proceso de ley al no

---

[1] La moción de Reconsideración sometida por la A.C. se fundamentó en un documento titulado *Resolución de Privilegio,* con fecha de 6 de mayo de 2008. Sin embargo, en la vista ante el tribunal de instancia se aceptó que hasta la fecha, el 23 de junio de 2008, aún no se le había notificado dicha resolución al señor Rivera Sierra.

celebrarse la Vista Final de Revocación del privilegio, que establece el Reglamento.

Examinada la moción de *certiorari,* concedimos a la A.C. un término de 30 días para mostrar causa por la cual no debiéramos expedir el auto solicitado y revocar la sentencia del Tribunal de Apelaciones. Ante el cumplimiento de la orden por la A.C., y contando con la comparecencia del peticionario, procedemos a resolver.

I

La Constitución del Estado Libre Asociado, en su Artículo VI, Sección 19, encomienda al Estado el tratamiento y rehabilitación de los confinados, así como declara nuestra política pública basada en la necesidad de darle prioridad al tratamiento diferenciado e individualizado de las personas que entran en contacto con el sistema de justicia criminal.[2] En cumplimiento de este mandato constitucional se promulgó la Ley Núm. 116 de 22 de julio de 1974, que creó la Administración de Corrección para administrar un sistema correccional integrado. Siendo la ley orgánica la fuente primaria de la autoridad de una agencia administrativa, ésta esboza como propósito principal el administrar un sistema dirigido a "implantar enfoques para estructurar formas más eficaces de tratamiento individualizado estableciendo o ampliando programas de rehabilitación en la comunidad". Art.

---

[2] Constitución del Estado Libre Asociado, Art. VI, 1 L.P.R.A. Sec. 19.

4 de la Ley Orgánica de la A.C., 4 L.P.R.A. sec. 1111. Concretamente, su exposición de motivos dispone que esta agencia administrativa tendrá los poderes y la flexibilidad necesaria para maximizar la probabilidad de rehabilitación del delincuente, para viabilizar su pronta reintegración al núcleo familiar y a la comunidad como ciudadano productivo y respetuoso de la ley.[3] Sin embargo, estas metas a seguir deben tener como contrapeso la compatibilidad con otros criterios de alto valor público, ya que "[s]e reconoce… la necesidad de utilizar al máximo compatible con la seguridad pública alternativas de servicio que ofrece la libre comunidad".[4]

Entre las facultades que ostenta la A.C. se encuentra el poder de implementar "la reglamentación necesaria para establecer programas de supervisión electrónica,[5] mediante los cuales la población correccional del sistema que cualifique para ello voluntariamente acepte participar, pueda cumplir sentencia fuera de la institución correccional". 4 L.P.R.A. sec. 1112(e). El Reglamento de Procedimientos Disciplinarios para Confinados y

_____

[3] Leyes de Puerto Rico, P. del S. 775, Ley Núm. 116 de 12 de julio de 1974, pág. 535.

[4] Íd.

[5] El Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica define dicha supervisión como el "proceso mediante el cual se permite a un miembro de la población correccional egresar de una institución correccional para permanecer en su hogar, mientras se utiliza un transmisor electrónico." Reglamento Núm. 6797, Artículo V (22).

Participantes de Programas de Desvío y Comunitario, Reglamento Núm. 6994 de 29 de junio de 2006, fue adoptado para reglamentar la suspensión de dichos derechos.[6]

El alcance de este Reglamento será aplicable a confinados que cometan o intenten cometer un acto prohibido en cualquier institución bajo la jurisdicción de la A.C., incluyendo el Programa de Supervisión Electrónica. Regla 3 del Reglamento Núm. 6994, supra.[7] Dicho Reglamento establece la estructura del aparato sancionador de la A.C., así como las normas sustantivas y los procedimientos que éste habrá de seguir. López Leyro v. E.L.A., 2008 T.S.P.R. 8, 173 D.P.R. ___. En caso de encontrarse al querellado incurso en la conducta prohibida, se le impondrá la sanción correspondiente al nivel de severidad asignado.[8] Álamo

---

[6] Con el propósito de mantener un ambiente de seguridad y el orden en las instituciones del país, es necesario que las autoridades penitenciarias tengan un **mecanismo flexible y eficaz** para imponer medidas disciplinarias a aquellos confinados que con su comportamiento incurran en violaciones a las normas de procedimiento establecidos en la institución. (Énfasis nuestro). Véase, Introducción del Reglamento de Procedimientos Disciplinarios, supra.

[7] Un Acto prohibido es "cualquier acto descrito en este Reglamento que implique una violación a las normas de conducta de la institución que conlleve la imposición de medidas disciplinarias, incluyendo cualquier acto o conducta tipificado como delito". Regla 4(A) del Reglamento 6994, supra.

[8] Los niveles de severidad se clasifican bajo tres renglones: el Nivel I de severidad está reservado para cualquier acto o tentativa de conducta tipificada como delito de naturaleza grave bajo el Código Penal; el Nivel II de severidad corresponde a cualquier acto o tentativa de conducta tipificada como delito de naturaleza menos grave bajo el Código Penal; mientras tanto, el Nivel III de

Romero v. Administración de Corrección, 2009 T.S.P.R. 6, 175 D.P.R. ____. La Regla 24(B)(5) del Reglamento 6994, supra, esclarece que se considerará un acto prohibido al Nivel I de severidad el violar las condiciones contractuales del Programa de Supervisión Electrónica.[9]

Al confinado que viole las condiciones del contrato de participación se le puede revocar el permiso de participar en el programa, seguido por su reingreso inmediato a la institución penal. Sin embargo, este proceso no es automático. Se debe realizar una vista de revocación presidida por un oficial examinador de vistas disciplinarias, que es un "funcionario que preside las vistas disciplinarias en la institución para los casos de actos prohibidos Nivel I y en los Programas de Desvío y Comunitarios".[10] Sobre las sanciones disciplinarias a participantes de Programas de Desvío o Comunitarios, la Regla 7(L) dispone que el Oficial Examinador podrá revocar el privilegio a aquellos participantes de los Programas de Desvío y Comunitarios que "incurran en violaciones graves a

---

severidad recoge los actos prohibidos de naturaleza menor que no están enumerados en el Nivel I y II.

[9] Véase, además, la Tabla I de los Apéndices del Reglamento 6994, supra, sobre actos prohibidos. La escala de severidad enumera, bajo el número 133, la violación de las condiciones del contrato de Programas de Desvío y Comunitarios, la cual "consiste en la violación de cualquiera de las condiciones establecidas en los contratos de Programas de Desvío y Comunitarios, incluye expresamente la Supervisión Electrónica". Íd., pág. 14.

[10] Regla 4(N) del Reglamento 6994, supra.

las reglas contractuales, según establecido en este Reglamento".

La Constitución del Estado Libre Asociado de Puerto Rico reza que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley". Constitución del Estado Libre Asociado, Art. II, 1 L.P.R.A. Sec. 7. El debido proceso de ley tiene dos vertientes: la sustantiva y la procesal. Ésta última "toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad". Serrano Vélez v. ELA, 154 D.P.R. 418 (2001); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). A su vez, esta disposición constitucional impone requisitos procesales a toda acción administrativa de carácter adjudicativo que intervenga con la vida, la libertad y la propiedad. Demetrio Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2$^{da.}$ Ed., Forum, 2001, pág. 314; Rivera Rodríguez & Co. v. Lee Stowell Taylor, 133 D.P.R. 981 (1993). Luego de determinar la acción estatal, para poder otorgar una acción bajo el debido proceso de ley es menester examinar dicho reclamo e identificar primeramente si existe un interés libertario o propietario que amerite protección. De contestarse en la afirmativa esta primera interrogante, el Tribunal dilucidará cuál es el procedimiento exigido para afectar de algún modo este interés. Álamo Romero v. Administración de Corrección, 2009 T.S.P.R. 6; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562,

578 (1992); Rivera Santiago v. Srio. de Hacienda, supra, pág. 274.

Es de suma importancia recalcar que "en nuestra jurisdicción el desarrollo de la doctrina [del debido proceso de ley] ha sido similar al de Estados Unidos". Maldonado Elías v. González Rivera, 118 D.P.R. 260, 273 (1987). El Tribunal Supremo federal, siguiendo la estela de Goldberg v. Kelly, 397 U.S. 254 (1970), reconoció en Morrissey v. Brewer, 408 U.S. 471 (1972), el derecho al debido proceso de ley de las personas que disfrutaban de libertad bajo palabra.[11] Posteriormente, en Gagnon v. Scarpelli, 411 U.S. 778 (1973), se le extendió igualmente este derecho a los beneficiarios de sentencia suspendida; y en Wolff v. McDonnell, 418 U.S. 539 (1974), a los confinados.

Esta doctrina fue adoptada en Puerto Rico por este Tribunal en Martínez Torres v. Amaro Pérez, 116 D.P.R. 717, 723-724 (1985), cuando se determinó que aunque la libertad conferida a un convicto bajo sentencia suspendida no se equipara a la libertad que disfruta un ciudadano común, ya que se encuentra sujeta al cumplimiento de las condiciones fijadas, el Estado no puede cancelar este derecho con

---

[11] "Before a determination or finding as to whether to revoke a petitioner's parole can be made it appears that the principles of fundamental justice and fairness would afford the parolee a reasonable opportunity to explain away the accusation of a parole violation. The parolee is entitled to a conditional liberty and possessed of a right which can be forfeited only by reason of a breach of the conditions of the grant." Morrissey v. Brewer, supra, pág. 947.

abstracción total de las normas constitucionales básicas. Por ende, "no puede privarse a una persona de su libertad absoluta o limitada sin cumplirse con los requisitos del debido proceso de ley que corresponden a este momento." *Id.*, pág. 725. De esta forma, este Tribunal adoptó las doctrinas esbozadas por el Tribunal Supremo federal en Morrissey v. Brewer, supra, y Gagnon v. Scarpelli, supra, en cuanto al debido proceso de ley requerido:

> El procedimiento prescrito requiere la celebración de dos vistas: (1) una vista sumaria inicial para determinar si hay causa probable para creer que el liberado ha violado las condiciones de su libertad, y (2) una vista final para determinar si procede la revocación de la libertad bajo palabra. Se reconoce el derecho del liberado a notificación de las alegadas infracciones a las condiciones de la libertad bajo palabra; el derecho a comparecer y presentar evidencia a su favor; confrontar y contrainterrogar testigos adversos; el derecho a que la decisión de revocación sea tomada por un juzgador neutral e independiente y a que se hagan determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó y las razones para revocar la libertad bajo palabra. Quiles v. del Valle, 167 D.P.R. 458, 476 (2006); Ortiz Serrano v. Alcaide Penitenciaría Estatal, 131 D.P.R. 849, 859 (1992).

Hemos reconocido que los confinados que se someten voluntariamente al Programa de Desvío o Comunitario, incluyendo al Programa de Supervisión Electrónica, tienen un interés libertario en continuar disfrutando de su libertad, mientras transcurre el término de la sentencia. Sin embargo, por tratarse de la revocación de una libertad limitada en un procedimiento posterior a la convicción, el confinado no tiene derecho a todas las garantías procesales que se exigen

para un proceso criminal.[12] Maldonado Elías v. González Rivera, 118 D.P.R. 260 (1987); Martínez Torres v. Amaro Perez, supra.[13]

Como el señor Rivera Sierra disfrutaba de un interés libertario, que fue afectado por la acción administrativa de la A.C., procedemos a evaluar si se violó el debido proceso de ley al no proveérsele la oportunidad de ser oído ni de presentar prueba, durante el procedimiento disciplinario para revocarle su participación en el Programa de Supervisión Electrónica.

## II

La A.C. es una agencia administrativa regida por las disposiciones de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.).[14] Este ente administrativo debe cumplir con las exigencias mínimas del debido proceso que dispone esta ley en cuanto a sus actuaciones de naturaleza cuasi-adjudicativas.[15] Sin embargo, la L.P.A.U., al igual que

---

[12] Además, la concesión de esta libertad no es absoluta, sino que es discrecional por parte de la agencia y condicionada al cumplimiento de las condiciones impuestas por el Reglamento.

[13] Véase además, Ernesto Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Forum, 1991, vol. 1, sec. 7.1, pág. 519.

[14] 3 L.P.R.A. § 2101 et seq.

[15] Concretamente, la sección 3.1 enumera las siguientes garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo formal celebrado por una agencia: el derecho a una notificación oportuna de los cargos en contra de una parte, a presentar evidencia, a una adjudicación imparcial y a que la decisión sea basada en el expediente. 3 L.P.R.A. § 2151.

nuestra jurisprudencia, aclara que los procedimientos cuasi-adjudicativos informales "están exentos de los requisitos establecidos para la adjudicación formal de controversias". Crespo Claudio v. Oficina de Ética Gubernamental, 2008 TSPR 84, 174 D.P.R.___ (2008).[16] También, hemos enfatizado anteriormente que los procedimientos disciplinarios no involucran los mismos intereses que los procesos criminales.[17] Esto porque en el ámbito administrativo, el debido proceso de ley carece de la rigidez que se le reconoce en la esfera penal. López v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996). Lo importante es que el proceso sea justo y equitativo. Véase además, Torres Acosta v. Junta Examinadora, 161 D.P.R. 696 (2004).

Ahora bien, el señor Rivera Sierra alega que la vista final de revocación se pautó, como surge de la citación en el expediente, para el 21 de diciembre de 2007. No obstante, la oficial examinadora suspendió la vista hasta atender, por

---

[16] "Los procedimientos informales deben estar subordinados y ser congruentes con la política pública de cada agencia. Las normas y guías que se perfilen tienen que estar inspiradas en los fines y propósitos de los diferentes estatutos orgánicos de las agencias administrativas. Por consiguiente, es un asunto que debe ser objeto de particular reglamentación por cada agencia y no de regulación uniforme por la ley". Demetrio Fernández Quiñones, supra, pág. 6.

[17] Recientemente, en Álamo Romero v. Administración de Corrección, supra, este Tribunal se negó a reconocer el derecho a asistencia de abogado en los procedimientos disciplinarios informales que pueden culminar en la cancelación de bonificación por buena conducta; ya que de haber introducido la figura del abogado en los procedimientos disciplinarios "se imprimiría en éstos un matiz adversativo que reduciría su utilidad como mecanismo ágil y flexible dirigido a mantener el orden y la seguridad en las prisiones".

escrito, una solicitud verbal de desestimación. No consta en el expediente cuál fue la acción de la oficial examinadora en cuanto a la moción de desestimación. Simplemente hay una resolución del 6 de mayo en la que se acoge la recomendación de revocar la participación del confinado. Por otro lado, tanto en su alegato ante el Tribunal de Apelaciones como ante nosotros, la A.C. aduce que la Vista Final de Revocación tuvo lugar el 21 de diciembre de 2007 y que en ésta el confinado no admitió haber cometido las imputadas violaciones a las condiciones del programa. Sin embargo, en su moción de reconsideración ante el tribunal de instancia, del 23 de junio de 2008, la A.C. alegó que la Vista Final de Revocación se celebró el 5 de febrero de 2008. En la Resolución de Privilegio también se indica que la fecha de la Vista Final de Revocación se celebró el 5 de febrero de 2008.

Sin embargo, no se encuentra en el expediente la notificación de una Vista Final de Revocación para el 5 de febrero de 2008.[18] El señor Rivera Sierra planteó que la vista nunca se celebró. Su representante legal fue notificado personal e informalmente en el Anexo 308 de la institución correccional de Bayamón, cuando éste atendía casos de otros confinados. La vista fue señalada para ese mismo día sin mediar notificación previa alguna, según expone el señor Rivera Sierra. Otro ejemplo de falta de

---

[18] La Regla 14(e) del Reglamento 6994, supra, dispone que las vistas disciplinarias deben ser notificadas con al menos un día laborable de antelación a la vista.

notificación crasa ocurre en cuanto a la notificación de la Resolución de la A.C., revocando la participación del señor Rivera Sierra del Programa de Supervisión Electrónica. La propia A.C. reconoció en su Moción de Reconsideración, del 23 de junio de 2008, que no se le notificó al confinado esta resolución desde el 6 de mayo de 2008 hasta el 23 de junio de 2008. El silencio sepulcral que guarda el expediente en cuanto a las dos notificaciones es, como mínimo, preocupante y no reafirma de forma alguna las alegaciones confusas y contradictorias de la A.C.

Además, existen otras irregularidades en el proceso disciplinario informal, como lo es la patente violación, por parte de la A.C., a la Regla 17 del Reglamento 6994, supra, en cuanto al uso de prueba confidencial para determinar que el participante del Programa de Supervisión Electrónica violó las condiciones de participación. Concretamente, la Regla 17(D) dispone que: "[c]uando el confinado es encontrado responsable basado en información confidencial, el Oficial Examinador de Vistas Disciplinarias… definirá los criterios para establecer la confiabilidad en cada informante y las razones para arribar a esa conclusión **en la querella disciplinaria**". (Énfasis nuestro). Basta examinar la querella disciplinaria para despejar cualquier duda, ya que se refleja que no se cumplió con dicho mandato. La querella disciplinaria menciona solamente a la señora Amarylis Lebrón Flores, como única testigo de los alegados incidentes que desembocaron en el reingreso del señor Rivera

Sierra a la cárcel. La querella expone, en su encasillado relacionado a la evidencia presentada y su obtención, que el "[i]nforme de situación… a través de información obtenida por la Unidad de Supervisión Electrónica". En el próximo encasillado aclara que la forma en que se aseguró la evidencia fue "a través de información testifical". A pesar de esto, surge de la Resolución de Privilegio que se utilizó una querella confidencial en el fallo de la Oficial Examinadora como mecanismo de prueba para revocar el privilegio del señor Rivera Sierra. Esta querella confidencial no le fue informada al confinado, como lo exige el Reglamento 6994, supra.

También, la Regla 15(F) del Reglamento 6994, supra, establece que el Oficial Examinador tomará la correspondiente determinación y emitirá una resolución. La misma "debe emitirse el mismo día y será notificada al confinado al día laborable siguiente a la celebración de la vista disciplinaria". No obstante, aún obviando la controversia de cuándo fue la vista, si es que se celebró, el 21 de diciembre de 2007 o el 5 de febrero de 2008, señalamos que la resolución se emitió el 6 de mayo de 2008 y no fue notificada inmediatamente al confinado. Al contrario, el señor Rivera Sierra supo de la resolución sólo cuando compareció la A.C. a someter su moción de reconsideración del 23 de junio de 2009, en claro incumplimiento de una

orden del foro de primera instancia.[19] Estas irregularidades constituyen no tan sólo patentes incumplimientos al debido proceso de ley constitucional, sino que también vulneran los procedimientos disciplinarios establecidos en el Reglamento 6994, supra.[20]

Claro está, los procesos cuasi-adjudicativos informales existen como determinación de política pública, debido al grado de flexibilidad deseable en ellos por su naturaleza de alto interés público.[21] En el caso ante nuestra

---

[19] "La Administración de Corrección en su solicitud [de reconsideración] presentó como anejo la Resolución de vista inicial del 10 de diciembre de 2007 y la Resolución de Privilegio del 5 de febrero de 2008, en la cual recomienda dejar sin efecto el privilegio al peticionario. Dicha resolución a pesar de tener fecha del 5 de febrero de 2008, fue acogida por la Administración de Corrección el 6 de mayo de 2008. A la fecha de la adjudicación de la Solicitud de Reconsideración de la Administración de Corrección, aún dicha Resolución no se le había notificado al peticionario." Véase, *Resolución* del T.P.I., del 26 de junio de 2008, dictada por la Jueza Superior Mariela Miranda Recio, pág. 2-3.

[20] La R. 25 del Reglamento 6994, supra, dispone que la "acción disciplinaria será tomada con prontitud y al grado necesario para normalizar la conducta del confinado, de manera imparcial y consistente". Aclara, además, que este principio aplicará "en todas las situaciones en las cuales se inicie un procedimiento disciplinario contra un confinado".

[21] Aunque está reconocido que el alcance del debido proceso de ley se encuentra menguado ante los órganos adjudicativos de las agencias administrativas, debido a su tarea prioritaria de llevar a cabo un procedimiento ágil y flexible, ello no conlleva menospreciar lo que está en juego: la protección de los ciudadanos ante la actuación arbitraria y caprichosa de los entes implementadores de la política pública del Estado. Los derechos concedidos, tales como el derecho a ser oído y presentar prueba, son dirigidos a establecer los hechos en controversia que forman parte de la disputa en el área del funcionamiento, o *expertise*, de la agencia administrativa. La necesidad de comprobar los hechos

consideración, el confinado tendrá, luego de la vista inicial para determinar causa probable de violación de las condiciones del programa, la oportunidad en una vista final informal, de dar su versión de los hechos.[22] A pesar de que el propio Reglamento esclarece que la vista disciplinaria es un procedimiento de adjudicación informal,[23] la Ley Orgánica de la A.C. señala, por otro lado, que **para revocar la participación de los miembros de la población correccional en los Programas de Supervisión Electrónica se cumplirá con el debido proceso de ley.**[24]

---

es esencial; no tan sólo en la búsqueda de la verdad, sino para asegurarse que las agencias administrativas cumplan con sus propios reglamentos y su ley orgánica.

[22] "[I]nformal procedure, which does not fulfill criteria of natural justice as adequately as formal procedure… does provide more appropriate machinery for fact-finding and greater flexibility for taking into account policy considerations than the approach of formal adjudication." Peter Woll, supra, pág. 187.

[23] La Vista Disciplinaria es un procedimiento de adjudicación informal donde **"el confinado tiene el derecho a escuchar y refutar las imputaciones en su contra y defenderse** por derecho propio". (*Énfasis Nuestro*) Regla 4 (Z), supra. Sin embargo, en casos de revocación de privilegios comunitarios o de desvío, el confinado tendrá derecho a comparecer representado por un abogado admitido en la práctica de la profesión. *Íd.*

[24] "El Reglamento establecerá… requisitos de elegibilidad para [los programas de supervisión electrónica] y para revocar la participación de los miembros de la población correccional en los mismos, **cumpliendo con el debido proceso de ley."** (Énfasis nuestro). 4 L.P.R.A. sec. 1112(e). Además, como ejemplos del debido proceso de ley concedido al confinado durante la Vista de Revocación Final se encuentran: el derecho a tener representación legal presente, a hacer declaraciones y a presentar prueba en su favor.

En fin, la audiencia es sinónimo de juicio y "tiene que conformarse a los fundamentos de juicio justo e imparcial".[25] El tipo de vista adecuada dependerá de que se efectúe un balance entre los intereses privados y los gubernamentales.[26] Este Tribunal ha enfatizado anteriormente que "la armonización del debido proceso de ley con el no menos importante interés de la debida seguridad de la comunidad, aunque compleja, no es imposible". Martínez Torres v. Amaro Pérez, supra, pág. 725.

Es un principio reiterado del Derecho administrativo que cuando una agencia administrativa promulga un reglamento, por imperativo del debido proceso de ley, está obligada a seguirlo y no queda a su arbitrio reconocer o no los derechos que se establecen en el mismo. García Cabán v. U.P.R., 120 D.P.R. 167, 175 (1987); Díaz Llovet v. Gobernador, 112 D.P.R. 747, 757 (1983). La ley orgánica de una agencia administrativa y la L.P.A.U. son las dos fuentes

---

Véase, además, R. 14(j)(1) y R. 14(k) del Reglamento 6994, supra. El inciso (j) de la misma Regla 14, supra, deja claro que el confinado tendrá derecho a asistencia en la Vista Disciplinaria por el Investigador de Vistas, tal asistencia incluye "la obtención de testigos e información adicional y documentos del Oficial Querellante y otros miembros del personal." Continúa el inciso (j)(1) declarando que "[e]l confinado podrá tener representación legal sólo en aquellas vistas donde puede ser revocada su participación en algún Programa de Desvío y Comunitario, Supervisión Electrónica, o Programa de Pases Extendidos". El inciso (k) de la propia Regla 14, supra, dispone que "[d]urante la vista administrativa el confinado tiene el derecho a hacer declaraciones, presentar pruebas a su favor durante la vista o guardar silencio".

[25] Demetrio Fernández Quiñones, supra, pág. 156.

[26] Demetrio Fernández Quiñones, supra, pág. 366.

mayores de importancia en el aspecto procesal. Según el profesor Demetrio Fernández Quiñones, "[a]mbas, pautan el procedimiento y gobiernan las actuaciones administrativas. Los requisitos procesales sólo se obtienen mediante una lectura conjunta de las disposiciones pertinentes de ambos estatutos y un análisis que los interrelacione". Supra, pág. 308. Como bien señala nuestra jurisprudencia, para poder revocar la participación de un confinado en el Programa de Supervisión Electrónica y encarcelarle nuevamente, la A.C. debe celebrar dos vistas.

Es evidente que en este caso existen alegaciones encontradas sobre si se celebró o no la vista final de revocación. La ausencia del registro o los informes que debe confeccionar la Oficial Examinadora en estos procedimientos disciplinarios informales agrava la situación.[27] No consta en el expediente que la A.C. haya cumplido con este mandato reglamentario, el cual tiene la finalidad de documentar los procedimientos disciplinarios expeditos. Tal incongruencia de fechas, y su posterior falta de corroboración es desconcertante. Más aún cuando lo que está en juego es la libertad condicionada del confinado, que equivale al interés libertario que requiere nuestra jurisprudencia como

---

[27] La R. 25(D) del Reglamento 6994, supra, establece que: "[s]e deben mantener informes, registros y expedientes fieles y exactos que expongan en detalle el procedimiento según lo dispuesto en este Reglamento." Esta disposición nos remite a la R. 14(N) la cual dispone que "[s]erá responsabilidad del Oficial Examinador de Vistas Disciplinarias hacer un informe escrito de la vista".

fundamento para la aplicación de la doctrina del debido proceso de ley.[28]

La A.C. no nos ha puesto en posición de poder concluir que se celebró la vista final de revocación, porque no se desprende del expediente que la oficial examinadora cumpliera con su obligación de mantener un registro o informe de las vistas celebradas. Tampoco surge del expediente que el representante legal del señor Rivera Sierra fuera notificado de la vista ni que se hubiera contestado la moción de desestimación. Finalmente, el expediente evidencia que para revocar el privilegio de libertad condicionada bajo el programa de supervisión electrónica se utilizó prueba confidencial que no fue informada al peticionario en la querella disciplinaria. Lo único que sí está claro es que no se le notificó al confinado la resolución del 6 de mayo de 2008 hasta el 23 de junio de 2008, fecha en que comparece la A.C. ante el tribunal de instancia solicitando la reconsideración del Hábeas Corpus. Cada una de estas situaciones inciden en el derecho al debido proceso de ley que tiene el señor Rivera Sierra antes de que se le arrebatara su interés libertario. Además, el incumplimiento de la A.C. con el proceso requerido por el Reglamento 6994, provocó que el

---

[28] Máxime cuando su Ley Orgánica establece que no tan sólo será reingresado a la institución penal, sino que "[u]na vez la determinación de revocar [la participación] sea final y firme, el período de tiempo que el confinado estuvo participando del programa de desvío… no se le abonará como tiempo cumplido de la sentencia". Art. 10-B, 4 L.P.R.A. sec. 1136(b).

peticionario se mantuviera encarcelado por un periodo extenso sin tener ni siquiera conocimiento de la decisión adversa y, por ende, sin poder solicitar revisión judicial ante el foro apelativo. Ciertamente, la actuación de la A.C. constituye una clara violación al derecho del señor Rivera Sierra al debido proceso de ley.

Por todo lo antes expuesto, se expide el auto de *certiorari,* se revoca la resolución recurrida y se ordena la excarcelación del señor Rivera Sierra y su reinstalación en el Programa de Supervisión Electrónica.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. El Juez Asociado señor Martínez Torres disiente con opinión escrita. La Jueza Asociada señora Pabón Charneco no interviene.


Aida I. Oquendo Graulau
Secretaria del Tribunal

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilson Rivera Sierra

       Peticionario

           v.

                                 CC-2009-124
Superintendente   Institución
Anexo 500 de Guayama, et. Al.

       Recurrido

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 24 de mayo de 2010.

Disiento respetuosamente de la determinación mayoritaria de este Tribunal. Entiendo que la Sentencia del Tribunal de Apelaciones y la Resolución del Tribunal de Primera Instancia, son correctas en derecho. Opino, contrario a la mayoría, que el peticionario no estuvo confinado más de seis meses sin celebrársele una vista final. Por ello, no precedía la concesión del recurso de *hábeas corpus* solicitado. Su detención no fue ilegal. Sin embargo, creo que el peticionario tenía a su favor el recurso de *mandamus,* como remedio judicial disponible, ante la demora de la

Administración de Corrección en notificar el dictamen final adjudicativo sobre la revocación del privilegio de supervisión electrónica.

I

La divergencia de criterios surge, principalmente, del análisis y evaluación de los hechos del presente caso. Por tal razón, procedo a realizar una breve discusión de lo aquí ocurrido.

El 11 de agosto de 2004, al peticionario se le concedió por primera vez el privilegio de supervisión electrónica. El 14 de julio de 2006, éste violó las condiciones del Programa de Supervisión Electrónica y, posteriormente, el 29 de noviembre de 2007, se le reinstaló el privilegio. El 3 de diciembre de 2007, al peticionario se le imputó infringir nuevamente las condiciones del programa, entre ellas: (1) abandonar el área permitida; (2) removerse el brazalete electrónico; (3) negarse a someterse o abandonar el proceso de muestra de las pruebas toxicológicas; y (4) provocar conflictos familiares o en la comunidad que afecten su seguridad, la de su familia o la de la comunidad.

Por tal razón, el **5 de diciembre de 2007** el peticionario fue ingresado de nuevo a una institución penal en Bayamón. Cinco días después, el 10 de diciembre de 2007, se le celebró una vista inicial, y luego, se le citó para una vista administrativa disciplinaria final pautada para el 21 de diciembre de 2007. A esta última,

el peticionario compareció junto a su representante legal y solicitó la desestimación de los cargos por alegado incumplimiento con el debido proceso de ley en la vista inicial. Estuvo presente el Oficial de Custodia de la Oficina de Procedimientos Disciplinarios y la Oficial Examinadora. Tras esos trámites procesales, sólo restaba celebrar la vista final y emitir una resolución sobre la revocación del privilegio.

El 16 de junio de 2008, el peticionario presentó en el Tribunal de Primera Instancia un recurso de *hábeas corpus.* Allí, argumentó que llevaba más de cinco (5) meses encarcelado sin que se le celebrara una vista final y que, por lo tanto, su arresto era ilegal. Tras celebrar vista, el foro primario emitió Resolución y Orden en la que decretó la excarcelación del peticionario, por éste alegadamente permanecer en exceso de seis (6) meses ingresado en prisión sin que se le celebrara la vista final de revocación de privilegio del Programa de Supervisión Electrónica.

El 23 de junio de 2008, el peticionario solicitó, con carácter de urgencia, un desacato y alegó que la Administración de Corrección no había cumplido con la orden de excarcelación. Ese mismo día, la Administración de Corrección compareció, en reconsideración, al Tribunal de Primera Instancias y aseguró que, contrario a lo expuesto por el peticionario, el **5 de febrero de 2008** se había celebrado la vista final de revocación ante la

Oficial Examinadora, Addith Valle Torres. Además, indicó que el peticionario y su representante legal comparecieron a la vista, en la cual se recomendó la revocación del privilegio. La Administración de Corrección anejó copia de la resolución titulada "Resolución de Privilegio", la cual señala que la vista final se celebró el 5 de febrero de 2008 y que fue acogida el 6 de mayo de 2008 por el administrador de la agencia. Sin embargo, dicha Resolución, al día que fue presentada la reconsideración, no había sido notificada al peticionario.

El Tribunal de Primera Instancia acogió la moción de reconsideración e indicó que su determinación anterior fue basada en información incompleta. Por tal razón, dejó sin efecto la resolución del 20 de junio de 2008, en la cual ordenó la excarcelación del peticionario. Mencionó que

> [l]a omisión de informar sobre la celebración de la vista final de revocación el 5 de febrero de 2008, a la que compareció la representación legal del peticionario, omisión que fue repetida tanto en las mociones presentadas y en comparecencia ante este tribunal, tuvieron el efecto de inducir a este tribunal a error y de concedernos una jurisdicción que ciertamente no teníamos. (Apéndice del recurso, página 97).

El peticionario acudió al Tribunal de Apelaciones, que confirmó el dictamen del foro primario. De esa determinación acude el peticionario ante este Tribunal y alega nuevamente que no se celebró vista final alguna el 5 de febrero de 2008. Expone que no se le notificó a

tiempo de la celebración de la vista y que su representante legal advino en conocimiento de ésta ese mismo día porque estaba atendiendo los asuntos de otro confinado. Arguye, además, que no hubo desfile de prueba ni derecho a confrontar la prueba adversa y que el 5 de febrero de 2008 únicamente hubo una conversación informal con la Oficial Examinadora. Asimismo, reveló que la Oficial Examinadora "[s]e limitó a mencionar a manera de comentario, que surgía del expediente una prueba confidencial, que a su juicio haría imposible de todos modos la salida del Sr. Rivera Sierra". (*Certiorari* del peticionario, página 4). El peticionario también indicó que la Oficial Examinadora no grabó las vistas del 21 de diciembre de 2007 y el 5 de febrero de 2008. En fin, nos solicita que concedamos el recurso de *hábeas corpus* por llevar más de seis (6) meses en prisión sin que se le celebrara la vista final adjudicativa para la remoción del privilegio. Este Tribunal concluye que tenía razón. Discrepo.

## II

El auto de **_hábeas corpus_** es un recurso extraordinario de naturaleza civil mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. Quiles v. Del Valle, 167 D.P.R. 458, 466 (2006); Ramos Rosa v. Maldonado Vázquez, 123 D.P.R. 885, 889 (1989), citando a D.

Nevares-Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 2da ed. Rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, pág. 170. Este recurso se encuentra reglamentado por los artículos 469-500 del Código de Enjuiciamiento Criminal, y la Ley de 12 de marzo de 1903, Secs. 1-8, 34 L.P.R.A. secs. 1741-1780. Además, está garantizado por la Constitución de Puerto Rico en el Artículo II, Sección 13.

Como regla general, antes de acogerse un recurso de *hábeas corpus* tienen que agotarse todos los remedios ordinarios disponibles. Ortiz v. Alcaide Penitenciaría Estatal, 131 D.P.R. 849, 861 (1992); Reynolds v. Jefe Penitenciaría, 90 D.P.R. 373 (1964). El uso del auto de **hábeas corpus** debe limitarse a casos verdaderamente excepcionales y a situaciones que lo ameriten. Ortiz v. Alcaide Penitenciaría Estatal, supra. Este Tribunal ha resuelto que, salvo circunstancias excepcionales, no se concederá el auto de **hábeas corpus** en sustitución de los remedios ordinarios provistos en la ley. Otero Fernández v. Alguacil, 116 D.P.R. 733, 740 (1985). Es por ello que no se emitirá un auto de *hábeas corpus* para omitir o evadir un procedimiento apelativo. *Id.*

Al evaluar si existen circunstancias excepcionales, los tribunales deben evaluar, además de la disponibilidad de un remedio efectivo para revisar un error y evitar la continuación de la detención ilegal, factores tales como si de la petición, emana: (1) que ha habido una patente

violación a algún derecho constitucional fundamental; (2) que no ha habido una renuncia válida a ese derecho; y (3) la necesidad de una vista evidenciaria. *Id.*, págs. 740-741.

III

La Ley Núm. 116 de 22 de julio de 1974, 4 L.P.R.A. sec. 1101 y ss., faculta a la Administración de Corrección a promulgar la reglamentación necesaria para establecer los programas de supervisión electrónica. Para la fecha en que el peticionario cometió las alegadas infracciones, estaba vigente el Reglamento Núm. 6041, el cual establecía los procedimientos para el Programa de Supervisión Electrónica. Éste cubría la aplicabilidad del procedimiento, los criterios de elegibilidad, exclusiones, funciones del Director del Programa y los procedimientos y responsabilidades del personal de la Administración. Dicho reglamento fue posteriormente derogado por el Reglamento Núm. 7640 de 19 de diciembre de 2008.

En lo pertinente, el Artículo IX, Sección 3, sobre la Revocación de Privilegio, disponía que el Oficial Examinador:

    a. Celebrará una vista inicial dentro de los próximos diez (10) días laborables luego de ingresado el participante.

    b. Evaluará el Informe de Querella rendido por el técnico de servicios sociopenales y determinará lo siguiente:

        • Si existe causa probable para creer que ha violado las condiciones;

advertirá al miembro de la población correccional sobre sus derechos.
• Si no existe causa probable; ordenará de inmediato el archivo y el egreso del miembro de la población correccional bajo las mismas condiciones en las que se encontraba al momento de su reingreso.

c. Emitirá la resolución correspondiente.

d. De existir causa probable; referirá el caso a otro oficial examinador dentro de los próximos cinco (5) días laborables de haberse celebrado la vista inicial.
[. . . . . . .]
f. Se celebrará la vista final en un término de treinta (30) días laborables, después de haberse celebrado la vista inicial.

g. Notificará al miembro de la población correccional sobre la celebración de la vista final con diez (10) días laborables de anticipación.

h. Celebrará la vista final.

i. Emitirá resolución final en los próximos veinte (20) días laborables de celebrada la vista final o vista consolidada.

j. Se enviará resolución final a la Oficina del Administrador (a), o persona delegada para la revisión y la firma.

k. Si el participante solicitase posposición de la vista final por justa causa, ésta podrá ser concedida hasta un máximo de una ocasión y la solicitud de posposición constituirá la renuncia a los términos para la celebración de la vista. La solicitud deberá ser por escrito en un término de tres (3) días laborables antes de la vista señalada. Reglamento, Páginas 24-26.

De igual forma, en aquel momento aplicaba el Reglamento Núm. 6994 de 29 de junio de 2005, el cual era el Reglamento de Procedimientos Disciplinarios para Confinados y Participantes del Programa de Desvío y Comunitarios. Éste disponía para la adjudicación de la

privación del privilegio, la celebración de una vista inicial y otra vista final. Ese reglamento fue derogado por el Reglamento Núm. 7748 de 23 de septiembre de 2009.

IV

Como se puede apreciar, la mayoría de este Tribunal acogió las alegaciones expuestas por el peticionario en su recurso y las adoptó como parte de los hechos. Concluyó que procedía el recurso de *hábeas corpus*, y así, ordenó la excarcelación del peticionario. Creo que el recurso de *hábeas corpus* no procede en este caso. Mi conclusión se sostiene en el hecho de que existe prueba en el expediente que muestra que la Oficial Examinadora emitió una resolución de revocación de privilegio el 5 de febrero de 2008. Surge, además, que el peticionario acudió a dos vistas, el 21 de diciembre de 2007 y el 5 de febrero de 2008. Compareció junto con su representante legal. Incluso, de la resolución se desprende que la Administración de Corrección acogió las recomendaciones de la Oficial Examinadora el 6 de mayo de 2008. En ese sentido, no tengo duda de que existió un dictamen final de parte de la agencia, por lo que la encarcelación del peticionario no es ilegal.

El peticionario solicitó un recurso de *hábeas corpus* sin informar al foro primario que hubo una vista final. Es más, no mencionó siquiera que ocurrió una vista el 5 de febrero de 2008. Ante la falta de información, el Tribunal de Primera Instancia concluyó que el

peticionario llevaba más de seis (6) meses encarcelado sin celebrársele vista alguna. Sin embargo, como se puede apreciar de los hechos, ello no fue así.

El 23 de junio de 2008, la resolución final no había sido notificada todavía. Ante eso, el peticionario tenía dos alternativas: (1) esperar la notificación de la resolución final, para entonces solicitar al Tribunal de Apelaciones revisión administrativa; o, en su lugar, (2) requerir mediante recurso de *mandamus* a la Administración de Corrección que notificara su dictamen final. Dado el hecho de que habían pasado seis (6) meses desde el día que comenzó el proceso adjudicativo en la Administración de Corrección, mantengo que procedía solicitar un recurso de *mandamus*.

La Ley Núm. 170 de 12 de agosto de 1998, Sección 3.13, 3 L.P.R.A. sec. 2163, conocida como la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), dispone que todo caso sometido a un procedimiento adjudicativo, como lo sería el caso de la revocación del privilegio de supervisión electrónica anteriormente descrito, debe ser resuelto en seis (6) meses desde su radicación. Este término es de carácter directivo. J. Exam. Tec. Méd. v. Elías et al., 144 D.P.R. 483, 494 (1997). Es por ello que, cuando una agencia incumple con su obligación de adjudicar un pleito en el término dispuesto por la L.P.A.U., hemos resuelto que el remedio judicial

disponible es la presentación de un recurso de *mandamus*. *Id.*, pág. 495.

Como se sabe, el recurso de **mandamus** es un auto discrecional y altamente privilegiado.  Está

> [d]irigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría dentro de su jurisdicción requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que este dentro de sus atribuciones o deberes. Dicho auto no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo.
>
> Artículo 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3421.

Es mediante este recurso que se obliga al cumplimiento de un acto que la ley ordena como deber resultante de un empleo, cargo, o función pública. Art. 650 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3422.  Es decir, tiene que tratarse de un deber ministerial expreso. *Id.*

Éste es el recurso apropiado para compeler al cumplimiento de un deber impuesto por una ley cuando no se dispone de otro remedio legal adecuado. Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1961). Por ello, el recurso de **mandamus** procede únicamente cuando se carece de otro remedio legal adecuado y eficaz en el curso ordinario de la ley, Art. 651 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3423.

Sobre ese particular, entiendo que el peticionario debió ser proactivo y solicitar un recurso de *mandamus* en el que requiriera a la Administración de Corrección la

notificación del dictamen. La agencia está compelida por ley a completar el procedimiento adjudicativo. Por ello, el *mandamus* es el trámite procesal adecuado cuando la agencia administrativa lleva más de seis (6) meses sin emitir su adjudicación final. Esto es crucial porque hasta tanto se notifique esa determinación, el peticionario está impedido de poder revisar la adjudicación de la agencia ante el Tribunal de Apelaciones mediante la revisión judicial de la decisión administrativa.

Uno de los argumentos de este Tribunal para revocar es que la Administración de Corrección indicó en su alegato que la fecha de la vista final fue el 21 de diciembre de 2007 y que en la reconsideración al foro primario reveló que fue el 5 de febrero de 2008. La mayoría concluyó que la Administración de Corrección fue incongruente en las fechas, por lo que existía incertidumbre sobre la celebración de una vista final adjudicativa. La aseveración de la Administración de Corrección es confusa pero el expediente aclara la situación.

Surge de los hechos que la vista de diciembre era la fecha que originalmente se había pautado para la vista final y que la Oficial Examinadora realizó varias gestiones ese día. No obstante, hubo otra vista el 5 de febrero de 2008. Ese día se emitió la resolución de la Oficial Examinadora, que posteriormente fue acogida por

la agencia. Estos datos evidencian la intención de la agencia de cumplir con el proceso. Recordemos que fue el peticionario quien solicitó la desestimación el día de la vista final, lo que provocó la celebración de una continuación. Así pues, el peticionario tuvo dos oportunidades para presentar prueba a su favor, luego de la vista inicial. Éste no estuvo desprovisto de oportunidades para ser escuchado ante la agencia.

Ahora bien, a pesar de que el peticionario sostiene que ocurrieron varias torpezas en el proceso de adjudicación administrativa, entiendo que éste no es el procedimiento para atenderlas. Este Tribunal debió reconocer que existe en récord una adjudicación final de la agencia y que el peticionario tenía otro medio para alegar los errores cometidos por la agencia en el procedimiento adjudicativo. A este Tribunal le correspondía presumir que la resolución de la agencia era correcta y legal. Henríquez Soto v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); M & B.S., Inc. v. Departamento de Agricultura, 118 D.P.R. 319, 331 (1987); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692,699 (1975). Es por ello, que una vez se notificara la resolución de la agencia, le correspondía al peticionario proveer prueba de su ilegalidad o incorrección en un proceso de revisión administrativa. El recurso de *hábeas corpus* solamente contempla si la encarcelación fue legal

o no. El mismo no permite que se atiendan los errores en los méritos expuestos por el peticionario.

Atender esos argumentos en este recurso parece equivocado, máxime cuando existe un dictamen final de la agencia, que tan pronto se notifique, otorgará al peticionario el derecho a entablar revisión judicial. Las alegaciones del peticionario sobre las deficiencias de la vista y las alegadas faltas de notificación en término de los distintos trámites procesales, son materia a discutirse en un recurso de revisión administrativa. De hecho, la Administración de Corrección señaló en su alegato que no rebatió ninguna alegación del peticionario por entender que éste no es el recurso procesal adecuado para atender ese tipo de planteamientos. (Escrito para Mostrar Causa en Cumplimiento de Resolución, pág. 25). Tiene razón. Ese tipo de análisis y exposición debe ser realizado en una revisión judicial de la decisión de la agencia y no mediante un recurso de *hábeas corpus*.

Al atender los méritos del reclamo del peticionario, este Tribunal está atendiendo una revisión administrativa mediante un recurso inadecuado. Sólo con las alegaciones de una parte. Si la vista ocurrió conforme a derecho, o si se usó prueba confidencial para sustentarla, o si el abogado del peticionario no fue notificado debidamente de la fecha en que se iba a celebrar la vista son aspectos que deben argumentarse en una revisión judicial.

V.

En conclusión, la Administración de Corrección promulgó los Reglamentos Núm. 6041 y 6994 que disponían los términos y procedimientos para privar a un confinado del privilegio de supervisión electrónica. Cuando el peticionario observó que la agencia se estaba tardando para notificar el dictamen final, debió contemplar el remedio de *mandamus* para obligar a la Administración de Corrección a completar el procedimiento disciplinario, y así, solicitar revisión judicial. Será mediante ese medio, que el peticionario tendrá que alegar gran parte de los argumentos relacionados con la falta de notificación y las fallas en el procedimiento adjudicativo. La conclusión a la que llegó la mayoría permite que el peticionario esquive esa revisión. La detención del peticionario no es ilegal. Se debe a una orden administrativa. En todo caso, se alega que la agencia debió resolver de otra forma y que obvió su procedimiento. Ante la disponibilidad de un *mandamus* y eventualmente, de una revisión judicial, no procede el *hábeas corpus*. Es por esta razón que disiento respetuosamente.

Rafael L. Martínez Torres
Juez Asociado