Opinión disidente emitida por el
Juez Asociado Señor Es-trella Martínez,
a la cual se unen el Juez Presidente Señor Hernández Denton, la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
Respetuosamente disiento por entender que se violenta-ron los derechos de la parte peticionaria y que el Regla- *490 mentó para la Selección, Admisión y Ocupación Conti-nuada en los Residenciales Públicos contiene remedios para atender situaciones como las que nos ocupa. No puedo hacerme de la vista larga e ignorar las garantías expresas que contiene la mencionada reglamentación.
I
El Sr. Edwin Molina Figueroa es un invidente que ha residido desde su nacimiento en el Apartamento Núm. 2 del Edificio Núm. 19 del Residencial Enrique Catoni de Vega Baja, propiedad de la Administración de Vivienda Pública (A.V.P.). Este apartamento ha sido su hogar. El señor Molina Figueroa vivía en el mencionado lugar junto a su madre, la Sra. Petra Figueroa Olivo, quien era la titular del contrato de arrendamiento de la propiedad.
El 11 de junio de 2002 la señora Figueroa Olivo renovó su contrato de arrendamiento con la A.V.P. En ese contrato incluyó al señor Molina Figueroa como miembro de la com-posición familiar. De igual forma, el señor Molina Figueroa fue incluido en los complementos de contrato de los años 2002 al 2004.
Posteriormente, el peticionario fue convicto por una in-fracción al Art. 406 de la Ley de Sustancias Controladas. Por esa condena estuvo confinado desde el 19 de abril de 2005 hasta el 28 de abril de 2006, cuando la Administra-ción de Corrección le extendió un pase por buena conducta y por su condición de salud. El pase fue brindado debido a que su salud estaba empeorando y debía seguir con su tratamiento. Así, desde el 5 de mayo.de 2006 se acogió a los beneficios de Pase extendido en razón de salud, Ley Núm. 27 de 20 de julio de 1989 (4 L.P.R.A. 1112(e)). En el con-trato entre el señor Molina Figueroa y la Administración de Corrección se indicó que su hogar sería el apartamento al que hemos hecho referencia. Es decir, el señor Molina Figueroa estaba obligado a permanecer en dicho aparta- *491 mentó para cumplir con el programa establecido por la Ad-ministración de Corrección.
El 20 de mayo de 2005 la señora Figueroa Olivo suscri-bió un Complemento de contrato en el cual no incluyó al señor Molina Figueroa. En el 2007 se realizó un nuevo con-trato en el que, por estar la señora Figueroa Olivo enca-mada, se utilizaron sus huellas digitales. En este contrato tampoco se incluyó al señor Molina Figueroa.
El peticionario sostiene que tan pronto supo que no era parte del mencionado contrato, solicitó ser incluido en éste en varias ocasiones. También alegó que verbalmente le no-tificaron que no cumplía con los requisitos.
El 6 de septiembre de 2007 el peticionario solicitó a la Administración del Residencial Enrique Catoni, mediante comunicación vía correo certificado con acuse, que se ejer-ciera la acción administrativa correspondiente para que fuera incluido en el contrato. En la carta se explicó la si-tuación particular que estaba atravesando el ciudadano, su impedimento visual de tipo degenerativo y las necesidades que tenía. Al no recibir contestación alguna, el 24 de sep-tiembre de 2007 enviaron una segunda misiva. En ésta expresaron que consideraban que retirarlo del aparta-mento era una acción prematura, ya que no se había ex-presado la Administración en cuanto a las múltiples solici-tudes del peticionario para ser parte del contrato.
El 4 de octubre de 2007 la Administración presentó una demanda de desahucio ante el Tribunal de Primera Instancia. Antes de ser emplazado, el 16 de octubre de 2007 el señor Molina Figueroa presentó una petición al amparo de la Ley sobre Controversias y Estados Provisio-nales de Derecho, Ley Núm. 140 de 23 de julio de 1974. El foro primario emitió una resolución fijando un estado provisional de derecho, el cual era obligatorio mientras no se ventilara el caso en un juicio ordinario. Ordenó que el se-ñor Molina Figueroa fuera mantenido en ese u otro apar-tamento del residencial. El foro primario señaló que la ad- *492 ministradora fue incluso consultada para la probatoria y dio la aprobación para ésta. Expresó el tribunal que el se-ñor Molina Figueroa ha estado viviendo de forma pública y pacífica, que es un no vidente, y que no podíamos abstraer-nos de esa realidad y desecharlo a su suerte.
Surge del expediente una carta del 6 de diciembre de 2007 entregada a la mano de la administradora del resi-dencial, la Sra. Rosa Figueroa, en la cual la Corporación de Acción Civil y Educación, entre otras cosas, le solicitaba que se le brindara acomodo razonable al señor Molina Figueroa. Ap. III, Expediente de Tribunal de Apelaciones. Se explicó en esta carta que el peticionario era un invi-dente a quien debía brindársele un acomodo razonable de acuerdo con la Ley ADA por la cual estaba cubierto. En específico, señalaron que procedía modificar algunos crite-rios reglamentarios, políticas, procedimientos y normas administrativas con el propósito de que el derecho de vi-vienda del señor Molina Figueroa no se viera afectado. To-dos estos intentos fueron infructuosos.
El proceso de la demanda de desahucio siguió su curso. El hermano del peticionario, el Sr. Luis Martínez Figueroa, quien se encargaba de pagar el apartamento así como las otras cuentas de la señora Figueroa Olivo, testificó durante la vista que el señor Molina Figueroa vivió toda su vida en el apartamento. Transcripción de Vista de Seguimiento de 19 de diciembre de 2007, pág. 59. Además, expresó que solicitó incluir al señor Molina Figueroa en el contrato del 2007 y que le dijeron que llevara los documentos. Trans-cripción de Vista, id., pág. 64. Argüyó que incluyó los docu-mentos excepto el certificado de buena conducta ya que le explicó a la administradora que su hermano estaba cum-pliendo una sentencia. Así las cosas, luego de que muere su madre fue a pagar la renta del mes de septiembre, pero no se la aceptaron y le dijeron que la administradora quería hablar con él. Según consta en su testimonio, al ir le dije-ron que le realizaría una entrevista; sin embargo testificó *493 que no se le realizaron preguntas sino que la administra-dora escribió en un papel y le requirió firmar, y que él le dijo que no firmaría hasta que revisara lo que decía. Alegó que una empleada firmó por él indicando que se había ne-gado a firmar. Transcripción de Vista, id., pág. 66. Testificó que luego de este incidente no ocurrió nada más, ni hubo notificación posterior. Además, indicó que el hermano no tiene otro sitio donde vivir. Transcripción de la Vista, id., pág. 68.
Por su parte, el señor Molina Figueroa argüyó que siem-pre había sido parte del contrato y que al regresar al apar-tamento luego de que se le extendiera el pase extendido se entera de que no fue parte de éste en el 2005. Al tener conocimiento de esta situación, realizó las gestiones para que fuera incluido. El peticionario alegó que le entregó los documentos, incluyendo el certificado de antecedentes penales. Sin embargo, la administradora le notificó verbal-mente que eso no servía. Según surge de su testimonio, posteriormente le dejaron una nota en la puerta notifi-cando el desahucio. Alegó que no lo apercibieron de algún derecho a revisión o un derecho a vista administrativa.
Durante la vista en el Tribunal de Primera Instancia, el señor Molina Figueroa expresó acerca de como se afectaría con el desahucio lo siguiente:
P. ¿Cómo usted se afectaría si fuera desahuciado?
R. Bendito, imagínese, yo no veo, yo no sé para dónde yo voy a ir. Que sea lo que Dios quiera.
Transcripción de Vista, id., pág. 76.
Sin embargo, el Tribunal de Primera Instancia declaró “ha lugar” la demanda de desahucio en precario. Basó su dictamen en que la denegación de la A.V.P. se debió a que no había transcurrido tres años y un día desde que se ex-tinguió la sentencia en el caso criminal del peticionario. Además, expresó que procedía el desahucio ya que no exis-tía un contrato de arrendamiento. El señor Molina Figueroa presentó una moción de determinaciones adicionales *494 de hechos y conclusiones adicionales de derecho. Además, presentó una solicitud de reconsideración. Ambas fueron denegadas.
No conforme con la sentencia dictada, el señor Molina Figueroa presentó un recurso de apelación ante el Tribunal de Apelaciones. Ese mismo día, ante la inminencia de la ejecución del lanzamiento, presentó ante el mencionado tribunal una moción en auxilio de jurisdicción en la cual solicitó que se paralizara la orden de lanzamiento y que se dejara sin efecto la sentencia del Tribunal de Primera Instancia.
El 18 de diciembre de 2008 el Tribunal de Apelaciones emitió una sentencia en la cual confirmó el dictamen del foro primario. Indicó el foro apelativo intermedio que el peticionario nunca presentó el certificado de antecedentes penales, por lo que no completó el proceso de solicitud.
Nuevamente inconforme, el peticionario recurrió ante nos mediante un recurso de apelación. Sostuvo que el Tribunal de Apelaciones había cometido varios errores. Entre estos, el determinar que la notificación verbal hecha al se-ñor Molina Figueroa informándole que no cualificaba para una nueva vivienda fue conforme con el debido proceso de ley y con los requisitos que se han establecido en los reglamentos. El 15 de junio de 2009 expedimos y acogimos el recurso como uno de certiorari. Posteriormente, el 12 de mayo de 2010 declaramos “con lugar” la solicitud de para-lización de la Orden de Lanzamiento dictada por el Tribunal de Primera Instancia.
II
A. Los contratos de arrendamiento en controversia es-tán sujetos al Reglamento para la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos, Re-glamento Núm. 6391 de la Administración de Vivienda Pú-blica de 31 de enero de 2002. Este reglamento establece las *495 normas que aplican a los solicitantes y residentes de vi-vienda pública.
El Art. VI del Reglamento Núm. 6391, supra, pág. 21, citado establece el trámite para el proceso de solicitud para admisión de vivienda. Este artículo dispone que una vez presentada la solicitud, la administración le requerirá al solicitante una serie de documentos.
El inciso (E) del Art. VI del Reglamento Núm. 6391, supra, pág. 24, indica que “[a]l momento de radicarse una solicitud la Administración clasificará al solicitante como aparentemente elegible, o inelegible, tomando en conside-ración la información y los documentos presentados”. Toda información relacionada a la clasificación de un solicitante deberá ser documentada y archivada en el expediente. El mismo inciso establece, además, que una vez se verifiquen los datos básicos de la solicitud, se preparará un resumen que contenga la elegibilidad de acuerdo al reglamento. Se toman en consideración la elegibilidad de acuerdo con los criterios del reglamento, incluyendo “los criterios para de-negar admisión por actividad criminal, droga y abuso de alcohol”. Art. VI(E)(6)(d)(1), pág. 29. De esta forma, los cri-terios acerca de determinación de admisión por actividad criminal son parte del examen de elegibilidad del solicitante.
En cuanto a los criterios para denegar la admisión por historial criminal el inciso F(c) del Reglamento Núm. 6391 establece claramente:
En caso de que se tenga evidencia que por una o más razones el solicitante es inelegible para admisión, la Administración le notificará por escrito dentro de los diez (10) días laborables a partir del momento de la determinación del solicitante, las razones, fundamentos y datos utilizados para llegar a tal determinación. Se le indicará que de no estar de acuerdo con la determinación de su caso, tiene derecho a solicitar una Vista Informal dentro de los diez (10) días siguientes a la fecha de la notificación. La vista será conducida por un Oficial Examinador. íd., pág. 31.
*496 De no poderse determinar la elegibilidad del solicitante, el inciso F(d) del Reglamento Núm. 6391, pág. 31, señala que se le informará por escrito las razones que impiden esta determinación.
En cuanto a las situaciones en las cuales el jefe de fa-milia muere, el Art. XVII(3) del Reglamento Núm. 6391, págs. 55-56, nos señala cuatro circunstancias. El inciso (a), el cual es la única circunstancia de esta sección citada por la mayoría, establece que se resolverá el contrato y se eje-cutará uno nuevo que lo firmará un miembro de la familia que reúna los requisitos de elegibilidad para ocupación continuada y que se haya quedado en la vivienda como remanente de la familia.(1) Por su parte, el inciso (c) con-tiene los remedios para situaciones en las que ningún miembro remanente de la familia califica como elegible para ocupación continuada o fuera un menor de edad sin tutor. En estas circunstancias el reglamento requiere que el Arrendador coordine con agencias gubernamentales e instituciones privadas para la solución apropiada del caso.
B. En materia administrativa, una vez una agencia ha promulgado un reglamento para facilitar su proceso deci-sional y limitar el alcance de su decisión está obligada a observarlo estrictamente. Rivera Sierra v. Supte. Anexo 500 Guayama, 179 D.P.R. 98 (2010); García Cabán v. U.P.R., 120 D.P.R. 167 (1987). “[L]as reglas o los reglamen-tos son expresiones de aplicación general que interpretan, implantan o prescriben la ley o la política pública”. Hernández Chiquez v. F.S.E., 152 D.P.R. 941, 951 (2000). Es por esta razón que los reglamentos promulgados por una agencia tienen fuerza vinculante, “habida cuenta que de-terminan derechos, deberes u obligaciones de las personas o los individuos ...”. Id. Las reglas promulgadas por una agencia tienen fuerza de ley y la agencia no tiene discre-ción para aplicarlas.
*497 III
Al aplicar el marco reglamentario anteriormente enun-ciado a los hechos del caso particular ante nuestra consi-deración, llegamos a una conclusión distinta a la de la ma-yoría de este Tribunal.
La señora madre del peticionario falleció el 26 de agosto de 2007. Era ella quien figuraba como jefa de familia en el contrato de arrendamiento con la A.V.P. para el aparta-mento de dos habitaciones en el que había residido el señor Molina Figueroa toda su vida y constituía su hogar. El Art. XVII del Reglamento Núm. 6391, pág. 54, acerca de las resoluciones o cambios de contrato de arrendamiento esta-blece, en el ya mencionado inciso, tres situaciones en las que el jefe de familia que firma el contrato muere. La ma-yoría sostiene que el señor Molina Figueroa no tenía dere-cho a la ocupación continuada ya que no aparecía en el contrato como parte de la composición familiar. Aunque re-conocemos este hecho, el mismo no es suficiente para con-cluir que procede desahuciar al peticionario.
La situación particular ante nos es una de muerte del jefe de familia que firma el contrato. Ante la posibilidad de que el señor Molina Figueroa no cumpliera con los requisi-tos para calificar como elegible para ocupación continuada, ello no exime de observar el citado inciso XVII (3)(c) del Reglamento Núm. 6391, pág. 56. Como discutimos, este inciso vislumbra situaciones especiales en las cuales no se cumplen con los requisitos de ocupación continuada que requiere el reglamento. La mencionada disposición utiliza la expresión miembro remanente de la familia y no compo-sición familiar. La definición de familia que brinda el Re-glamento citado es un grupo de dos o más personas rela-cionados por sangre, matrimonio, por adopción o por ser hijos de crianza que convivan regularmente en la misma *498 vivienda.(2) Incluso se considera familia a otros miembros que estén ausentes temporeramente cuyos ingresos o re-cursos, si los tuviera, estén disponibles para sufragar los gastos del grupo familiar. Id.
Señala claramente la citada disposición que, en estas situaciones, "el Arrendador coordinará con agencias guber-namentales e instituciones privadas para la solución apro-piada del caso”. Art. XVII (3)(c) del Reglamento Núm. 6391, pág. 56. La solución apropiada del caso no es desahu-ciar al familiar sin más. Precisamente, el arrendador debe de disponer de estas situaciones con las agencias e institu-ciones pertinentes. Considero que una situación como la del caso de epígrafe en la cual un familiar —hijo— quien sufre de un impedimento visual, y quien ha residido toda su vida en el apartamento, debería ser objeto de una solu-ción adecuada. Dejarlo a su suerte, sin un hogar a donde ir claramente no es la solución apropiada del caso.
Uno de los factores que la agencia debió considerar es la severa condición del señor Molina Figueroa. Existe una clara política pública del Estado a que toda persona con impedimento pueda vivir en un ambiente de tranquilidad, respeto y dignidad que satisfaga sus necesidades básicas de rehabilitación y vivienda. Art. 4 de la Carta de Derechos de las Personas con Impedimentos, Ley. Núm. 238 de 23 de agosto de 2004. Como parte de los derechos generales de las personas con impedimentos se encuentra el identificar con qué pariente o parientes desea convivir o el lugar donde desea hacerlo en un ambiente de amor, comprensión y sosiego. Id. Es política pública, además, el garantizar la coordinación de los recursos y servicios del Estado para atender las necesidades colectivas y particulares de las personas con impedimentos de acuerdo con su condición. Art. 3 de la Carta de Derechos de las Personas con impedimentos.
Además, la política en cuanto a las protecciones y pro- *499 cedimientos para personas con impedimentos permea en la propia reglamentación promulgada por la Administración de Vivienda Pública. Por ejemplo, el Art. V del Reglamento Núm. 6391, pág. 16, establece los criterios y prioridades en la selección. Incluye entre las personas con preferencia las personas incapacitadas y la definición del reglamento de personas incapacitadas incluye las personas ciegas.
El obviar dichas garantías e interpretar de manera rí-gida el procedimiento tiene como resultado que se violen los más mínimos parámetros de entendido social y calidad humana, afectando a un ciudadano que ha cumplido con su deuda con la sociedad y el que solamente solicita que se le permita permanecer en el que ha sido su hogar durante toda su vida. Siendo un no vidente, el removerlo de su ho-gar y de su comunidad tiene unas repercusiones para su vida diaria. Esta actuación incide en la manera en que vive y en sus necesidades. Sabido es que una persona con impe-dimento visual debe estar familiarizada con el lugar que habita para así poder valerse por sí misma. Es esencial para una persona ciega ser capaz de vestirse, comer, des-envolverse de manera independiente y no correr peligro. El permanecer en lugares conocidos facilita la realización de las actividades diarias. Ciertamente no es lo mismo retirar de su hogar a una persona que goza de salud, que retirar al señor Molina Figueroa. El retirarlo de su hogar sería el retirarlo de lo que es una rutina personal que le permite llevar una vida plena.
No le pido a la mayoría que brinde un trato privilegiado, sino que le reconozca al peticionario las garantías regla-mentarias aquí discutidas. Debemos mencionar que para obtener el pase extendido, el señor Molina Figueroa atra-vesó un riguroso proceso de evaluación. El apartamento en controversia fue el señalado por la Administración de Co-rrección para que el peticionario terminara de cumplir su sentencia. Entre los factores para determinar el lugar en el que debía permanecer se encuentran su condición y salud. *500 Determinaron que el mejor lugar para estar era el aparta-mento en cuestión, esto debido a su condición.
Actualmente han transcurrido los tres años requeridos luego de cumplida la sentencia del señor Molina Figueroa. Acerca de su conducta, a preguntas del tribunal la propia administradora expresó que el comportamiento del señor Molina Figueroa era excelente. Resolución fijando un es-tado provisional de derecho, Apéndice de la Apelación, págs. 76-79. Es una realidad que el señor Molina Figueroa no tiene otro lugar donde ir. Tanto el señor Molina Figueroa como su hermano aseguraron que el peticionario carece de otra vivienda o de otros familiares que puedan hacerse cargo de él.
En cuanto al proceso que se siguió con relación a la so-licitud del señor Molina Figueroa consideramos que fue en contravención a la reglamentación aplicable. La prueba testifical aportada durante la vista de desahucio demues-tra que el peticionario nunca recibió una contestación por escrito de parte de la administradora del residencial, a pe-sar de las múltiples gestiones realizadas para solicitar per-manecer en el apartamento. Transcripción de Vista de Se-guimiento de 19 de diciembre de 2007, págs. 47-48. La administradora admitió que se comunicó verbalmente con el señor Molina Figueroa y le dijo que no cumplía con los requisitos del Reglamento Núm. 6391. Sostuvo que no ha-bían entregado los documentos completos, por lo que no se había presentado certificación para incluir al miembro, pero que lo orientó verbalmente. Véase Transcripción de Vista, id., pág. 48. También testificó en cuanto a la orien-tación que le brindó al señor, y señaló que no le fue dado ningún documento en cuanto a esta determinación. Véase íd., pág. 44.
La notificación acerca de la determinación debía conte-ner las razones y fundamentos que utilizó la agencia para denegarle la vivienda pública al solicitante. La recurrida alega que estas obligaciones de la agencia no se activaron *501 ante la falta de un procedimiento formal de solicitud de vivienda. No estamos de acuerdo. La realidad es que el señor Molina Figueroa realizó una solicitud.
Además, la parte recurrida alega que no solicitó ocupa-ción continuada y de haberlo hecho no hubiese resultado elegible. Sin embargo, consideramos que el que no hubiese resultado elegible no es razón para que no sea acreedor de un proceso que constara de las debidas notificaciones y oportunidad de ser escuchado.
El no haber entregado el certificado de antecedentes pe-nales, como se arguye, no debe ser motivo para que se en-tienda que no es un solicitante. El proceso de solicitud que establece el Art. VI del Reglamento Núm. 6391, pág. 21, dispone que una vez presentada la solicitud, la administra-ción requerirá al solicitante una serie de documentos. Es por esto que se debe considerar como solicitante aun cuando no se hayan entregado todos los documentos. La entrega de éstos es parte del proceso, pero la falta de en-trega no convierte a la persona en un no solicitante.
El no cumplir con uno de los requisitos sí podría ser razón para denegar una solicitud, pero no para negarle los más mínimos requisitos de debida notificación que re-quiere el propio reglamento de la agencia. Una persona debe ser debidamente notificada para que de esta manera proceda a remediar la razón. Aun cuando se considere que un derecho reclamado es improcedente, ello no impide que se le garanticen los procedimientos establecidos en la re-glamentación de la agencia.
Si una agencia a través de su reglamento establece unos términos para facilitar su proceso decisional y limitar el alcance de su discreción, es una obligación observar tales términos. No queda a la discreción de la Administración el reconocer o no los derechos que ésta ha extendido en rela-ción con los requisitos de selección, admisión y ocupación continua de los apartamentos que componen los residen-ciales públicos del país.
*502 Las razones expresadas demuestran que no procedía el desahucio del señor Molina Figueroa. No debemos abs-traemos de la realidad del peticionario, quien a su avan-zada edad sufre de una condición de ceguera y se le pre-tende desalojar del apartamento y comunidad donde ha residido toda su vida.
IV
Por los fundamentos antes expuestos, respetuosamente disiento del criterio mayoritario. En su lugar, revocaría el dictamen del Tribunal de Apelaciones, y en consecuencia, decretaría no “ha lugar” al desahucio del señor Molina Figueroa.

 El Art. XIII establece los criterios de elegibilidad para ocupación continuada.

 Art. III del Reglamento Núm. 6391, pág. 7.