ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ADA NIEVES FERNÁNDEZ <br><br> Recurrente <br><br> v. <br><br> DEPARTAMENTO DE LA FAMILIA <br><br> Recurrido | KLRA202400573 | *Revisión Administrativa* procedente del Departamento de la Familia, Junta Adjudicativa <br><br> Caso Núm. 2023 PPAN 00005 <br><br> Sobre: Reclamación |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

I.

El 2 de junio de 2021, la Oficina Local de Gurabo remitió al técnico certificador de la División de Integridad Programática de la Región de Caguas (DIP), un *Referimiento de Casos para Determinación de Reclamaciones y Beneficios Retroactivos*, para evaluar el caso de la Sra. Ada Nieves Fernández. En lo especifico, la señora Nieves Fernández recibió beneficios indebidamente durante el periodo de febrero a abril de 2021 al no notificar la mudanza de su hija fuera de la residencia el 10 de enero de 2021. Posteriormente, el 25 de marzo de 2022, la Administración de Desarrollo Socioeconómico de la Familia (ADSEF), notificó a la señora Nieves Fernández que recibió beneficios del Programa de Asistencia Nutricional (PAN), en exceso de $28,140.64, desde octubre de 2012 hasta el mes de marzo de 2022.

El 27 de abril de 2022, la señora Nieves Fernández presentó una *Solicitud de Apelación.* Planteó, que, tomaron en consideración meses en los que no participó del PAN. El 29 de abril de 2022, la investigadora de la División de Integridad Programática rindió un

Número Identificador

SEN2025_____

*Informe de Apelaciones.* El 17 de octubre de 2022 la Junta Adjudicativa emitió y notificó una citación a vista para el 5 de diciembre de 2022. El 5 de diciembre de 2022 y el 26 de abril de 2023, se celebró la vista administrativa ante la Oficial Examinadora (OE), Lcda. Olga B. Rosas Vélez. El 26 de abril de 2023, la OE le concedió treinta (30) días a la señora Nieves Fernández para someter evidencia sobre el periodo en que esta no recibió los beneficios del PAN. El 19 de septiembre de 2024, la OE emitió y notificó su *Informe.*

El 20 de septiembre de 2024, la Junta Adjudicativa emitió y notificó *Resolución* mediante la cual adoptó el informe de la OE y confirmó la reclamación de cobro de dinero de beneficios del PAN a la señora Nieves Fernández. El 15 de octubre de 2024, la señora Nieves Fernández recurrió ante nos mediante *Revisión Administrativa.*

El 28 de octubre de 2024, notificada el 4 de noviembre de 2024, concedimos al Departamento de la Familia treinta (30) días para presentar su alegato de oposición. El 12 de diciembre de 2024, el Departamento de la Familia presentó el *Escrito en Cumplimiento de Resolución.* Con el beneficio de la comparecencia de las partes, la reproducción de la prueba oral, el Derecho y jurisprudencia aplicable, estamos en posición de resolver.

II.

La señora Nieves Fernández esgrime múltiples alegaciones. Primero, indica que la Junta Adjudicativa incumplió con el término de noventa (90) días para expedir el Informe del Oficial Examinador, según consta en el Manual de Procedimientos de la Junta Adjudicativa y que, expidió el mismo, quinientos (500) días posterior a última vista. Veamos.

A.

El Reglamento Núm. 7757, *Reglamento para establecer los procedimientos de adjudicación de controversias ante la Junta*

*Adjudicativa del Departamento de la Familia*, tiene como propósito "establecer las normas para regular los procedimientos de adjudicación de controversias en la Junta Adjudicativa del Departamento de la Familia, en cumplimiento con las disposiciones legales establecidas en la Ley 170".[1] Como parte de los procedimientos, el Art. 20 expone:

> El(La) Oficial Examinador(a) que preside la vista preparará un informe escrito o Proyecto de Resolución del caso para la consideración de los(as) miembros de la Junta, que incluirá una recomendación de orden o resolución con determinaciones de hechos y conclusiones de derecho, dentro de los treinta (30) días siguientes a la celebración de la vista.[2]

Asimismo, el referido artículo en el inciso (c) dispone que "[u]na orden o resolución final de la Junta deberá ser emitida por escrito dentro de los noventa (90) días siguientes a la celebración de la vista adjudicativa, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes, o por causa justificada".[3]

Por otro lado, la sección 3.13 (g) de la *Ley de Procedimientos Administrativos Uniforme* (LPAU) establece lo relativo al término que tiene una agencia para disponer de un caso, "[t]odo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo circunstancias excepcionales".[4] El propósito del mencionado plazo es asegurar que los procesos administrativos se lleven a cabo de manera rápida y eficiente, y así evitar que las agencias y sus directores incurran en tardanzas o dilaciones injustificadas.[5]

---

[1] DF, Reglamento para establecer los procedimientos de adjudicación de controversias ante la Junta Adjudicativa del Departamento de la Familia, Núm. 7757 (5 de octubre de 2009), https://transicion2016.pr.gov/Agencias/122/Informe%20de%20Reglamento%20y%20No rmas/Reglamento%207757%20%20Reglamento%20para%20Establecer%20los%20Proced imientos%20de%20Junta%20Adjudicativa.pdf.
[2] *Id.* en el Art. 20 (A).
[3] *Id.* en el Art. 20 (C).
[4] Véase: *Lab. Inst. Med. Ava.* v. *Lab. C. Borinquen*, 149 DPR 121, 136 (1999); *J. Exam. Tec. Méd.* v. *Elías et al.*, 144 DPR 483, 494-495 (1997).
[5] *Lab. Inst. Med. Ava.* v. 149 DPR, págs. 135-136.

Por su parte, la sección 3.14 de la LPAU,[6] exige que la resolución final de la agencia se emita por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. Por tanto, dicho término, al igual que el término de seis (6) meses, dispuesto en la precitada sección 3.13 (g) de la LPAU, **no es jurisdiccional**.[7] **Como términos directivos, pudieran ser prorrogados**.[8]

En ocasión de pronunciarse sobre este articulado, en *UPR Aguadilla* v. *Lorenzo Hernández*,[9] el Tribunal Supremo indicó que:

> Esas secciones disponen un término de seis (6) meses para resolver el procedimiento adjudicativo ante las agencias y otro término de noventa (90) días para emitir una resolución final después de concluida la vista o presentadas las determinaciones de hechos y conclusiones de derecho.
>
> A estos efectos, la Asamblea Legislativa impuso a las agencias la obligación de adjudicar todo caso dentro de los términos señalados. Hemos señalado que ambos términos son **directivos** y no jurisdiccionales. Sin embargo, la ampliación de los términos sólo ocurre en las circunstancias dispuestas en la Ley Núm. 170, *supra,* "a saber, circunstancias excepcionales, consentimiento escrito de todas las partes, o causa justificada". Ante el incumplimiento de una agencia con su deber de decidir expeditamente, la parte afectada tiene disponible como remedios "la presentación de un *mandamus* ante el foro judicial o una moción de desestimación ante la agencia concernida".[10]

B.

Ciertamente, la *Resolución* disponiendo de la controversia se emitió pasados los seis (6) meses desde la radicación de la *Querella.* No obstante, del expediente surgen circunstancias que justifican

---

[6] Dispone:
Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. [...] 3 LPRA § 9654.

[7] *J. Exam. Tec. Méd.* v. 144 DPR, págs. 494-495.

[8] *Id* (énfasis nuestro).

[9] *UPR Aguadilla* v. *Lorenzo Hernández,* 184 DPR 1001, 1009-1010 (2012).

[10] *Id.* en las págs. 1009-1010 (énfasis suplido).

haberse apartado del fiel cumplimiento de dicho térmno. Hubo dos señalamientos de vista administrativa, el 5 de diciembre de 2022 y el 26 de abril de 2023, respectivamente. La segunda vista se celebró debido a que se le brindó oportunidad a la señora Nieves Fernández de someter evidencia de sus alegaciones. El Departamento de la Familia sostuvo que la razón para la demora de la preparación del *Informe del Oficial Examinador* y, a su vez, el término para expedir el *Informe* y dictar la *Resolución* se debió a la extensa complejidad del asunto por su naturaleza y el alcance de la reclamación.

Aun cuando le atribuyamos a la Agencia recurrida algún grado de dejadez, el Tribunal Supremo ha reiterado que el remedio judicial disponible cuando existe una dilación indebida en los procesos adjudicativos administrativos es la presentación de un recurso de *mandamus* que obligue a la Agencia a cumplir con su responsabilidad.[11] La señora Nieves Fernández nunca ejerció el derecho de obtener remedio por dicha vía.

III.

La señora Nieves Fernández alega también, que no le permitieron examinar y fotocopiar el expediente hasta el 15 de noviembre de 2022, y que, en esa ocasión, no le permitieron sacar copias de algunos documentos por ser confidenciales. Añadió que no le permitieron examinar el expediente que conservan en la Oficina de Gurabo. Al traste de estas alegaciones, en su escrito relata que, el 5 de diciembre de 2022, día de la primera vista adjudicativa, se le entregó copia del expediente.

A.

La sección 3.8 de la LPAU, establece lo relativo a los descubrimientos de pruebas en las Agencias Administrativas. En lo pertinente:

> Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación

---

[11] *Rivera Sierra* v. *Supte. Anexo 500 Guayama*, 179 DPR 98, 151 (2010).

administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.[12]

En lo pertinente, conforme al Reglamento que regula los procedimientos ante el Departamento de la Familia, el Art. 11 del Reglamento Núm. 7757, dispone que el Oficial Examinador informará a la parte Apelante su derecho a:

Examinar el expediente de su caso que obra en la Junta antes de la vista, personalmente o mediante su representante debidamente autorizado; discutirlo con un representante de la Oficina Local, Regional, Programa o Junta de Subastas; fotocopiar por un costo económico mínimo aquellas partes del expediente que sean necesarias para exponer sus alegaciones en la vista y los documentos o récord que se utiliza en la misma. **El derecho a examinar los documentos en el expediente estará sujeto a las normas escritas sobre confidencialidad contenidas en la reglamentación aplicable a la Administración o Programa objeto de la apelación**.[13]

### B.

Como la propia señora Nieves Fernández indica, el 15 de noviembre de 2022, tuvo la oportunidad de examinar y fotocopiar el expediente y el 5 de diciembre de 2022 obtuvo copia del mismo. De esta forma el Departamento de la Familia cumplió con lo dispuesto en el Art. 11 del Reglamento Núm. 7757.

### IV.

La señora Nieves Fernández alega, además, que existen incongruencias en la determinación de *Reclamación y Beneficios* retroactivos (DSS-172) debido a que, en los números correspondientes a la columna de tamaño de familia en las líneas

---

[12] 3 LPRA § 9648.
[13] DF, Reglamento para establecer los procedimientos de adjudicación de controversias ante la Junta Adjudicativa del Departamento de la Familia, Núm. 7757 Art. 11 (5 de octubre de 2009), https://transicion2016.pr.gov/Agencias/122/Informe%20de%20Reglamento%20y%20Normas/Reglamento%207757%20-%20Reglamento%20para%20Establecer%20los%20Procedimientos%20de%20Junta%20Adjudicativa.pdf (énfasis nuestro).

cinco y seis, no concuerdan. Insiste en que, la prueba en el expediente evidencia que notificó los ingresos recibidos correctamente, que tenía derecho a recibir los beneficios por sus ingresos y composición familiar y que hay otros datos que no tomaron en consideración.

También señala, que hay discrepancia en el expediente respecto a la fecha en que informó el cambio de unidad familiar debido a que está firmado el 6 de mayo de 2021, pero lo notificó el 7 de mayo de 2021. Menciona que en la vista administrativa expuso posibles errores del sistema computarizado. Finalmente, añade que, acepta devolver los beneficios que recibió y que no le correspondían durante los meses de enero a marzo de 2021, periodo que corresponde a cuando su hija dejó de residir con esta. Examinemos la validez de sus reclamos.

A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[14] (LPAU), dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida Ley como la jurisprudencia aplicable establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.[15] Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado.[16] Por lo tanto, los

---

[14] Ley Núm. 38-2017.
[15] *T-JAC* v. *Caguas Centrum*, 148 DPR 70 (1999).
[16] *Mun. de San Juan* v. *Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez* v. *Centro Unido*, 168 DPR 592, 615–616 (2006).

tribunales deben ser cautelosos al intervenir con las decisiones administrativas.[17]

Es por estas razones que, como principio axiomático, las decisiones de los foros administrativos están investidos de una presunción de regularidad y corrección.[18] La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo.[19] Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de estas.[20]

Asimismo, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.[21] Hay que determinar si la agencia actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[22] Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad".[23]

A estos fines, se ha definido evidencia sustancial como "aquella [evidencia] pertinente que una mente razonable pueda

---

[17] *Metropolitana, S.E.* v. *ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo* v. *Clavell*, 131 DPR 275, 289–290 (1992).
[18] *García* v. *Cruz Auto Corp.*, 173 DPR 870 (2008); *Vélez* v. *ARPE*, 167 DPR 684 (2006); *Rivera Concepción* v. *ARPE*, 152 DPR 116, 123 (2000).
[19] *E.L.A.* v. *P.M.C.*, 163 DPR 478 (2004); *Misión Ind. P.R.* v. *Junta de Planificación*, 146 DPR 64, 130 (1998); *ARPE* v. *Junta de Apelaciones sobre Construcciones y Lotificaciones*, 124 DPR 858 (1989).
[20] *Rivera Concepción* v. *ARPE*, 152 DPR 116 (2000); *Fac. C. Soc. Aplicadas, Inc.* v. *C.E.S.*, 133 DPR 521 (1993).
[21] *Rebollo Vda. de Liceaga* v. *Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69 (2004).
[22] *Asociación de Vecinos Tulip/Monteverde, Inc.* v. *Junta de Planificación*, 171 DPR 863 (2007); *Marina Costa Azul* v. *Comisión*, 170 DPR 847 (2007).
[23] *Otero Mercado* v. *Toyota de P.R. Corp.*, 163 DPR 716 (2005); *Domingo Talavera* v. *Caguas Expressway Motors, Inc.*, 148 DPR 387 (1999).

aceptar como adecuada para sostener una conclusión".[24] Para establecer la alegación de ausencia de tal evidencia sustancial, la parte afectada debe demostrar que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial [...] hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba".[25]

En otras palabras, la parte recurrente viene obligada a derrotar la presunción de corrección de los procesos y de las decisiones administrativas.[26] Para lograr ese objetivo, tiene que demostrar que existe otra prueba en el récord que menoscabe el valor probatorio de la evidencia impugnada. Si la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor.[27]

Ahora bien, cuando se trate de conclusiones de derecho que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia, éstas serán revisables por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia.[28] Cuando se trate de la revisión de determinaciones que estén entremezcladas con conclusiones de derecho, el foro judicial tendrá amplia facultad de revisión, como si se tratara de una cuestión de derecho propiamente.[29]

B.

El *Reglamento para establecer las normas de elegibilidad del Programa de Asistencia Nutricional* (PAN), Núm. 8684, "tiene como

---

[24] *Ramírez* v. *Depto. de Salud*, 147 DPR 901, 905 (1999).
[25] *Metropolitana S.E.* v. *ARPE*, supra, pág. 213.
[26] *Fac. C. Soc. Aplicadas, Inc.* v. *C.E.S.*, supra, pág. 532.
[27] *Ramírez* v. *Depto. de Salud*, supra, pág. 905.
[28] *Rivera* v. *A & C Development Corp.*, 144 DPR 450 (1997).
[29] *Id.* en la pág. 461.

propósito establecer las normas que aseguren el trámite administrativo rápido, justo, sensible y accesible para determinar elegibilidad, conceder beneficios y establecer responsabilidades al amparo de la Ley Pública federal 97-35 del 13 de agosto de 1981".[30] Para determinar la elegibilidad de la persona solicitante, referido Reglamento establece como parte de sus responsabilidades:

A. Ofrecer la información correcta y completa sobre:

1. Tamaño y composición familiar
2. Identidad
3. Residencia
4. Ciudadanía
5. Condición de persona extranjera
6. Números de seguro social de las personas que componen el núcleo de servicio o evidencia de haberlo solicitado
7. Recursos o bienes que posean
8. Ingresos de todas las personas que son parte de la composición familiar y núcleo de servicio

B. Cooperar para que se pueda efectuar la visita al hogar o entrevistar vecinos (as).

C. Completar y fumar autorización que permita a la Administración verificar la información necesaria para determinar elegibilidad. Además, completará una autorización por cada adulto, menor con vida independiente o emancipado.
D. Asistir a cada cita que se le notifique. No *asistir* podría afectar su participación en el Programa.

E. Completar solicitud en una sola Oficina Local o Centro de Servicios Integrados.

F. Informar a la Administración cualquier cambio en su dirección residencial o postal, teléfono o dirección de correo electrónico.

G. Notificar a la Administración los cambios en la información ofrecida, según enumerada en el inciso A, en o antes de diez (10) días contados a partir de ocurrido el cambio. El incumplimiento podría conllevar que se establezca una reclamación.[31]

El Art. 5, inciso A define al jefe o jefa de la composición familiar como "[p]ersona responsable del caso, a nombre de quien se identifica el expediente, quien puede o no ser participante del programa".[32] A su vez, define núcleo de servicio como "[p]ersona o

---

[30] Reglamento para establecer las normas de elegibilidad del Programa de Asistencia Nutricional (PAN), Núm. 8684 (28 de diciembre de 2015), https://serviciosenlinea.adsef.pr.gov/documents/1.ReglamentoPAN.pdf.
[31] *Id.* Art. 13.
[32] *Id.* Art. 5 (A) 38.

grupo de personas dentro de la composición familiar que solicitan o reciben beneficios ya sea unido o de forma separada".[33] Por otro lado, persona encargada del núcleo de servicio se define como "[p]ersona a nombre de quien se completa la solicitud, evalúa y determina la elegibilidad al Programa".[34]

En cuanto a las responsabilidades del Núcleo de Servicio, el Art. 52 (A) establece que "[l]a persona encargada del núcleo de servicio, su cónyuge o representante autorizado (a) será responsable de proveer toda la información correcta y cierta para la determinación de elegibilidad y asignación de beneficios".[35] Asimismo, en cuanto a los cambios en el núcleo familiar, el Art. 52 (B) establece que:

> La persona encargada del núcleo de servicio, su cónyuge o representante autorizado (a) deberán informar los cambios por correo o personalmente en la Oficina Local o Centro de Servicios Integrados, **dentro de los diez (10) de haber ocurrido el cambio.** En los casos en que el día diez sea sábado, domingo o día feriado, tendrá hasta el próximo día laborable.[36]

Además, parte de las responsabilidades del encargado del núcleo familiar es notificar todo cambio ocurrido en el núcleo familiar que pueda afectar la elegibilidad.[37] En lo pertinente:

> Los cambios que deberán notificarse son:
>
> 1. En composición familiar
> 2. En fuente(s) de ingresos devengados o no devengados
> 3. En compensaciones por Desempleo, Seguro Social, Sinot, ACCA, Corporación del Fondo de Seguro del Estado, entre otros.
> 4. En ingresos brutos mensuales mayores de cien dólares ($100.00).[38]
> ….

La persona encargada debe notificar los cambios en las personas que componen el núcleo de servicio y de personas

---

[33] *Id.* Art. 5 (A) 43.
[34] *Id.* Art. 5 (50).
[35] *Id.* Art. 52 (A).
[36] *Id.* Art. 52 (B).
[37] *Id.* Art. 53 (A).
[38] *Id.* Art. 52 (D).

excluidas por descalificación que forman parte de este.[39] Además, el participante debe notificar el ingreso. El Art. 5 (30) define ingreso como "[c]ualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, retribución recibida por servicios prestados, de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones de propiedades, derivados de intereses, rentas, dividendos, beneficios de sociedad; valores o de la operación de cualquier negocio, compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba una persona".[40]

C.

El Art. 69 del Reglamento Núm. 8684 expone las situaciones que generan reclamaciones. En lo pertinente, el inciso A, regula las situaciones en las que se generan reclamaciones a razones de información provista por el núcleo de servicio, las instituciones o sus representantes autorizados. Dispone lo siguiente:

> A. Una reclamación de beneficios (incluyendo beneficios por desastres) se genera cuando el núcleo de servicios, las instituciones o sus representantes autorizados (as):
>> 1. Proveen información incompleta o incorrecta sobre las circunstancias del núcleo de servicio.
>> 2. No informan los cambios en el núcleo de servicio requeridos en el término establecido en este Reglamento.
>> 3. Alteran un documento para recibir los beneficios.
>> 4. Utilizan dos o más beneficios en un mismo mes.
>> 5. Utilizan los beneficios a pesar de que se le entregó notificación informando que el caso se cerró.
>> 6. Reciben beneficios mayores a los que era elegible por error administrativo.
>> 7. Utilizan los beneficios después de la fecha de defunción de la única persona beneficiaria.[41]

---

[39] *Id.* Art. 53 (A).
[40] *Id.* Art. 5 (30).
[41] *Id.* Art. 69 (A).

Sin embargo, "no se genera reclamación cuando la persona encargada del núcleo de servicio, su cónyuge o representante autorizado, o el (la) representante autorizado(a) de la institución no firma la solicitud de participación".[42] Tampoco cuando "[e]l núcleo de servicio participa en una oficina local que no le corresponde".[43] Tampoco se genera reclamación en "[s]ituaciones en que se incurre un error de derecho",[44] y en "[s]ituaciones en las que se demuestre que no estuvieron bajo el control del núcleo de servicios".[45]

Por otro lado, el Reglamento Núm. 8684 reconoce las reclamaciones por error administrativo. En tales casos:

> Se considera que ocurrió un error administrativo en los casos en que el núcleo de servicio fue notificado previamente de la cantidad correcta de beneficios que recibiría y el personal técnico:
>
>> A. No procesa un cambio correctamente *y/o* dentro del término qué correspondía,
>> B. Cornete un error al entrar los datos en el sistema mecanizado, y/o
>> C. Comete un error al elaborar el presupuesto *y/o* determinar la cuantía de los beneficios.[46]

Asimismo, el referido Reglamento reconoce las reclamaciones por error no intencionado. Dispone:

> Se considera que ocurrió un error no intencionado en los casos en que la reclamación sea de $500.00 o menos y el núcleo de servicio o la institución:
>> A. Presente evidencia que justifique el error que se le imputa o medie justa causa.
>> B. Informa cambios tardíamente, pero dentro de los treinta (30) días contados a partir de que ocurrió el cambio. En estos casos, silos cambio ocurren en los meses incluidos en la reclamación, se considera la situación real del núcleo de servicio.[47]

También, se reconocen las reclamaciones por posible violación intencional. Según el Art. 5 (72), una violación intencional es definida como "[a]cción de una persona participante del Programa

---

[42] *Id.* Art. 69 (B).
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.* Art. 70.
[47] *Id.* Art. 71.

que voluntariamente, con intención engañosa y a sabiendas obtiene beneficios que no le correspondían".[48] El Art. 72 del Reglamento 8684, expone:

> A. Se considera una posible violación intencional una reclamación en la que la persona encargada del núcleo de servicio, su cónyuge o representante autorizado(a), o el(la) representante autorizado (a) de la institución a sabiendas, con intención engañosa y voluntariamente incurre en una o más de las siguientes:
> > 1. Presenta una declaración escrita falsa o incorrecta sobre las circunstancias del núcleo de servicio.
> > 2. Oculta información sobre cambios, según se establece en este Reglamento, por un que excede los treinta (30) días contados a partir de que ocurrió el cambio.
> > 3. Presenta documentos alterados.
> > 4. Hace una falsa representación.
> > 5. La cuantía de la reclamación es de $500.01 o más.[49]

Para determinar si ocurrió una violación de carácter intencional, "[l]a Administración establecerá un procedimiento para determinar que se incurrió en violación intencional".[50] Asimismo, "[l]a Administración podrá referir los casos en los que se determine violación intencional al Departamento de Justicia para que sean evaluados para una posible radicación de cargos criminales o la presentación de una acción civil ordinaria".[51]

En casos dónde se determine que ocurrió una violación de carácter intencional y el participante utilizó beneficios a los que no tenía derecho se establecerá una reclamación.[52] "De proceder la reclamación, la gestión de cobro se hará a la persona encargada del núcleo de servicio, su cónyuge, cualquier integrante del núcleo de servicio, la persona que accedió los beneficios, su representante autorizado (a) o a la institución".[53] Será responsabilidad de la Administración, enviar o entregar una notificación a la persona que

---

[48] *Id.* Art. 5 (72).
[49] *Id.* Art. 72.
[50] *Id.* Art. 73 (A).
[51] *Id.* Art. 73 (B).
[52] *Id.* Art. 74 (A).
[53] *Id.* Art. 74 (B).

recibió los beneficios, su representante autorizado (a) o a la institución, con la siguiente información:

1. Motivo de la reclamación y el periodo que cubre la misma
2. Clasificación de la reclamación.
3. Cantidad adeudada.
4. Compensación con beneficios retroactivos que redujo o saldó la deuda, si aplica.
5. Derecho a presentar una apelación ante la Junta Adjudicativa del Departamento y el término para hacerlo.[54]

Finalmente, de probarse lo anteriormente expuesto, se requerirá al núcleo de servicio lo siguiente:

1. El pago total de la reclamación dentro de los treinta (30) días contados a partir de la fecha en que se firme el compromiso de pago.
2. **Se podrá establecer, en acuerdo con la persona deudora que es participante del Programa, que el pago de la reclamación se realice mediante la deducción del veinte por ciento (20%) de los beneficios regulares mensuales hasta saldar la deuda. Ese acuerdo no Podrá extenderse a un periodo mayor de sesenta (60) meses, excepto que medie justa causa.**
3. La Administración podrá acreditar a la deuda cualquier cantidad de beneficios retroactivos a los que tenga derecho el núcleo de servicio.
4. En los casos en los que la persona deudora sea empleada de una agencia del Estado Libre Asociado de Puerto Rico, del gobierno federal o de un municipio o de una empresa u organización privada, se completará el documento requerido para- el correspondiente descuento de nómina y se enviará al patrono.
*5.* En los casos en que se determine, después de un estudio socioeconómico, que la persona deudora no tiene los recursos económicos, se podrá establecer un plan de pago que no excederá de sesenta (60) meses.[55]

### D.

A la luz de estas disposiciones, evaluemos las determinaciones de hechos consignadas en el *Informe* rendido por la OE, acogidas en la *Resolución* de la Agencia, así como las conclusiones de derecho impugnadas.

1. La apelante, Sra. Ada Nieves Fernández, es la jefa de la familia y recibe los beneficios del Programa de Asistencia Nutricional (PAN) desde el 2010 hasta la actualidad.

---

[54] *Id.* Art. 74 (C).
[55] *Id.* Art. 74 (D) (Énfasis nuestro).

2. La composición familiar de la apelante hasta finales del 2020 consistía por la propia apelante y su hija, Gabriela Santana.

3. Desde enero de 2021 la hija de la apelante se fue de su residencia y ya no vivía con ella.

4. La apelante notificó el cambio de composición familiar en mayo de 2021, o sea, cinco (5) meses después de que su hija ya no vivía con ella.

5. Durante esos 5 meses la apelante estuvo recibiendo el beneficio como si fueran dos (2) personas en el núcleo familiar.
...
9. Dentro de la investigación se obtuvo evidencia de las planillas de contribución sobre ingresos para los años 2012 al 2021. En las planillas se evidenció que recibió ingresos durante los años 2012 al 2019. Para el 2020 la radicó planilla. Para el 2021 se radicó planilla con unos ingresos provenientes del Departamento del Trabajo del área del Desempleo, los cuales no se consideraron para la investigación.

10. Además, se evidenció en la Certificación Electrónica del Departamento del Trabajo que recibió beneficios de desempleo desde 18 de junio de 2019 hasta 28 de diciembre de 2019, los cuales sí fueron considerados para la investigación ya que los mismos no habían sido previamente informados. Estos ingresos se obtuvieron de la planilla del 2019, los cuales fueron prorrateados por los doce (12) meses del año.

11. Según la investigación, en enero 2020 la apelante notificó cambio de ingresos por el desempleo.

12. El 25 de marzo de 2022 se trabajó la reclamación y la misma procedió ya que la apelante tuvo ingresos, según se evidencia en sus planillas e ingresos por desempleo, que no fueron informados en el término reglamentario de diez (10) días, además del cambio en la composición familiar, el cual tampoco fue notificado dentro del término establecido.
...
14. La Sra. Ada Nieves Fernández testificó en la vista lo sucedido durante el tiempo reclamado. La apelante explicó que en junio de 2019 ella renunció al empleo que tenía en una empresa privada llamada "Special Occasions" donde trabajó durante once (11) años.
...
16. La apelante indicó que cuando ella renunció a su empleo en 2019, no recibía el beneficio del PAN.

17. La apelante expresó que luego de solicitar el desempleo fue al Departamento de la Familia entre diciembre 2019 y febrero 2020 y notificó que estaba desempleada. Luego, para febrero de 2020, estaba en trámites de solicitar empleo en el Censo, pero para marzo 2020 recibió una carta del censo indicándole que debido a la pandemia todo se había paralizado.

18. La apelante manifestó que recibió de dinero del "PUA" en el 2020 y fue el único ingreso que tuvo durante todo el 2020.

19. La apelante testificó que, para agosto de 2020, la llamaron del Censo para que comenzara a trabajar, pero ella tuvo que rechazarlo debido a que para ese entonces cuidaba a *sus* dos (2) nietos menores de edad. La apelante indicó en la vista que todavía cuidaba a sus nietos.

20. La Sra. Nieves expresó que continuó recibiendo el "PUA" en el 2021.

21. La apelante manifestó que no notificó dentro del término reglamentario que su hija menor, Gabriel Santana, se mudó de su casa y ya no vivía con ella.

22. La apelante alega que no notificó el cambio en la composición familiar a tiempo debido a que en las ocasiones que fue a la oficina local esta se encontraba cerrada y cuando llamaba, no contestaban el teléfono.
...
25. La apelante expresó que ella entendía que hubo períodos durante los años que están reclamando que ella no recibió el beneficio. En base a esto, a la apelante se le otorgó una segunda vista de apelación para darle la oportunidad de presentar evidencia sobre su alegación de no haber recibido el beneficio en ciertos términos.

26. El 12 de abril de 2021 la apelante recibió la Factura de Cobro, el Compromiso de Pago y la Notificación de Acción Tomada de Reclamación, informándole que recibió beneficios en exceso por $28,140.64 desde octubre 2012 hasta marzo 2022.

27. Según indicó la parte apelada, la apelante recibió $32,360.64 dólares en beneficios cuando se supone que haya recibido $4,220.00 dólares, por lo cual recibió $28,140.64 dólares en beneficio en exceso.
...
29. Se le hizo un plan de pago, el cual se trabajará por una reducción de beneficios con un pago mensual de $28.00 dólares con 1,006 plazos a ser descontados del beneficio que recibe, lo cual es un 20% de lo que recibe.

30. La apelante tenía que notificar el cambio de la composición familiar en un periodo de diez (10) días calendarios y al no haberlo realizado tiene como penalidad el devolver el dinero de la totalidad de 1 recibido entre febrero 2021 a abril 2021.

31. El caso está activo actualmente con factura mediante reducción de beneficios.

Según probado, las planillas contributivas evidenciaron el cambio de ingreso de la señora Nieves Fernández para los años 2012 al 2019. Surge del expediente, que la señora Nieves Fernández recibió los beneficios del PAN de manera continua desde octubre

2012 hasta mayo 2022 a pesar de que no notificó durante ese periodo los cambios en sus ingresos ni en la composición familiar. Además, recibió beneficios por desempleo desde 18 de junio de 2019 hasta 28 de diciembre de 2019, que tampoco notificó. Igual omitió notificar al Departamento los beneficios recibidos del PUA desde el año 2020 hasta el 2021, según ella misma relató. Como hemos dicho, parte de los compromisos para continuar participando del programa del PAN, es que la persona encargada del núcleo familiar notifique cualquier cambio de ingresos y composición familiar en un periodo de diez (10) días.

Por otro lado, la señora Nieves Fernández tampoco notificó cuando su hija dejó de residir en su hogar. En lo específico, la hija de la señora Nieves Fernández se mudó de la residencia a finales del año 2020 y esta se mantuvo recibiendo los beneficios para 2 personas hasta mayo de 2021. Es decir, notificó el referido cambio 5 meses después, incumpliendo nuevamente con el requisito de notificación.

Debido a lo anterior, la señora Nieves Fernández recibió un total de $32,360.64, mientras solo le correspondía recibir $4,220.00 para un balance en exceso, de $28,140.64. Aun cuando aceptáramos, según arguye la señora Nieves Fernández, que existen incongruencias en el documento, lo cierto es que de los testimonios ofrecidos por esta y de la prueba documental se establece que incumplió con lo dispuesto en el Reglamento y que recibió beneficios en exceso a lo que debía recibir. El total recibido sin derecho a ello, está sustentado por la prueba en el expediente.

La señora Nieves Fernández no ha podido persuadirnos de que la decisión recurrida es irrazonable o arbitraria, ni de que la evidencia sustancial que obra en el expediente sea falsa o insuficiente para cobrarle los beneficios recibidos en exceso. Tampoco detectamos en la investigación de los hechos o en la

determinación de la Oficial Examinador indicio alguno de pasión, prejuicio, parcialidad, arbitrariedad o error manifiesto. En ausencia de criterios para hacerlo, no podemos, por deferencia administrativa, descartar la determinación de la OE y sustituirla por la nuestra. La determinación es razonable y se sostiene en la evidencia sustancial que obra en el expediente.

V.

Por los fundamentos antes expuestos, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones